IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITEDHEALTHCARE SERVICES, INC.; UNITEDHEALTHCARE INSURANCE COMPANY, | § § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 3:17-CV-243 |
| NEXT HEALTH, LLC; UNITED TOXICOLOGY, LLC; MEDICUS LABORATORIES, LLC; U.S. TOXICOLOGY, LLC; AMERICAN LABORATORIES GROUP, LLC; ERIC BUGEN; AND KIRK ZAJAC, | § § § § § § § | |
| Defendants. | § § | |

## ENTITY DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Ernest Martin, Jr.
ernest.martin@haynesboone.com
Micah Skidmore
micah.skidmore@haynesboone.com
Christopher A. Rogers
chris.rogers@haynesboone.com
Nicole Sommerville
nicole.somerville@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
214-651-5000 (Telephone)
214-651-5940 (Telecopier)

ATTORNEYS FOR ENTITY DEFENDANTS NEXT HEALTH, LLC, MEDICUS LABORATORIES, LLC, UNITED TOXICOLOGY, LLC, U.S. TOXICOLOGY, LLC AND AMERICAN LABORATORIES GROUP, LLC

# TABLE OF CONTENTS

I.    INTRODUCTION & SUMMARY ...................................................................1

II.   ARGUMENT & AUTHORITIES ..................................................................4

    A.    UHC's Benefit Claims Should Be Dismissed Under Rule 12(b)(6)......................4

        1.    Standard Of Review Under Rule 12(b)(6). ..................................................4

        2.    UHC's Benefit Claims Are Preempted By ERISA......................................4

            a.    ERISA Preempts State Laws That "Relate To" Any Employee Benefit Plan..............................................................4

            b.    UHC's Benefit Claims Address An Area Of Exclusive Federal Concern. ......................................................5

            c.    UHC's Benefit Claims Directly Affect The Relationships Between Traditional ERISA Entities—The Plan And Its Beneficiaries. ............................................9

        3.    UHC's Benefit Claims Are Preempted Under FEHBA............................11

        4.    UHC Is Not Authorized To Pursue Claims Against Entity Defendants On Behalf Of Any Federal Employee Health Benefit Plan. .....................12

        5.    UHC's "Conspiracy To Commit Fraud" Claim Fails To State A Claim Upon Which Relief Can Be Granted.................................14

        6.    UHC's "Alter Ego" Claim Is Not A Separate Cause Of Action...............15

    B.    UHC's Complaint Fails To Allege Fraud And Misrepresentation With Particularity Under Rule 9(b).................................................15

        1.    Rule 9(b) Requires Allegations Of Who, What, When And Where For Each Alleged Misrepresentation. ....................................15

        2.    UHC's Complaint Does Not Allege Particularized Misrepresentations Regarding "Medical Necessity" Or "Patient Payment Responsibilities." ...............................................16

        3.    UHC's Complaint Fails To Allege Other "Misrepresentations" With Particularity.................................................19

            a.    Patient Assignments................................................20

|  |  | b. | Physician Authorizations ................................................................21 |
|  |  | c. | Provider Identification ...................................................................21 |
|  |  | d. | Medical Necessity...........................................................................22 |
|  |  | e. | "Custom" Testing Profiles ..............................................................22 |
|  |  | f. | Generic Allegations Of Fraud & Misrepresentation.....................23 |

C.     UHC's Lanham Act And Texas Theft Liability Act Claims Are Barred By Limitations. ..........................................................................................................24

    1.     UHC's Lanham Act Claim Is Time Barred. ................................................24

    2.     UHC's Texas Theft Liability Act Claim Is Untimely................................25

III.     CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abilene Reg'l Med. Ctr. v. United Indus. Workers Health & Benefits Plan*,
    2007 U.S. App. LEXIS 5231 (5th Cir. Mar. 6, 2007) ................................................. 9

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
    662 F.3d 376 (5th Cir. 2011),
    *opinion reinstated in part on reh'g*, 698 F.3d 229 (5th Cir. 2012) .......................... 5

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*,
    2015 WL 12777091 (C.D. Cal. Feb. 12, 2015) ..................................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 4

*Bank of La. v. Aetna U.S. Healthcare, Inc.*,
    468 F.3d 237 (5th Cir. 2006) ........................................................................ 5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 4

*Burkey v. Gov't Employees Hosp. Ass'n*,
    983 F.2d 656 (5th Cir. 1993) ......................................................................... 11

*Cent. States, Southeast & Southwest Areas Health & Welfare Fund v. Health
    Special Risk, Inc.*,
    2013 U.S. Dist. LEXIS 83400 (N.D. Tex. June 13, 2013) ................................ 7, 11

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010) ......................................................................... 18

*Cordero v. Avon Prods.*,
    629 Fed. Appx. 620 (5th Cir. 2015) ................................................................ 18

*Egelhoff v. Egelhoff ex rel. Breiner*,
    532 U.S. 141 (2001) .......................................................................................... 4

*Elliott v. Tilton*,
    89 F.3d 260 (5th Cir. 1996) ........................................................................... 14

*Empire HealthChoice Assur., Inc. v. McVeigh*,
    547 U.S. 677 (2006) ........................................................................................ 12

*Health Care Serv. Corp. v. Methodist Hosps.*,
    2015 U.S. Dist. LEXIS 54357 (N.D. Tex. Jan. 28, 2015) ................................... 12

*Hey v. Irving*,
　　1998 U.S. App. LEXIS 39439 (5th Cir. Oct. 2, 1998)..........................................................15

*Hightower v. Texas Hosp. Ass'n*,
　　65 F. 3d 443 (5th Cir. 1995) ...............................................................................................13

*Hollis v. Provident Life and Accident Ins. Co.*,
　　259 F.3d 410 (5th Cir. 2001) ................................................................................................6

*Hubbard v. Blue Cross & Blue Shield Ass'n*,
　　42 F.3d 942 (5th Cir. 1995) ..................................................................................................6

*Jaso v. Coca Cola Co.*,
　　435 Fed. Appx. 346 (5th Cir. 2011)....................................................................................24

*Jeanbaptiste v. Wells Fargo Bank, N.A.*,
　　2014 U.S. App. LEXIS 21468 (5th Cir. Nov. 7, 2014) ..................................................24, 25

*Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co.*,
　　2015 U.S. Dist. LEXIS 155702 (W.D. Tex. Nov. 18, 2015) ...................................................9

*In re Margaux Warren Park Partners, Ltd.*,
　　2009 Bankr. LEXIS 4128 (Bankr. E.D. Tex. Dec. 15, 2009) ................................................18

*Marucci Sports, L.L.C. v. NCAA*,
　　751 F.3d 368 (5th Cir. 2014) ...............................................................................................15

*Mary Kay, Inc. v. Weber*,
　　601 F. Supp. 2d 839 (N.D. Tex. 2009) ................................................................................24

*Mayeaux v. La. Health Serv. and Indem. Co.*,
　　376 F.3d 420 (5th Cir. 2004) ...........................................................................................5, 10

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*,
　　904 F.2d 236 (5th Cir. 1990) ................................................................................................9

*Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*,
　　2012 U.S. Dist. LEXIS 102789 (S.D. Tex. July 24, 2012)....................................................12

*Murex, LLC v. GRC Fuels, Inc.*,
　　2016 U.S. Dist. LEXIS 105391 (N.D. Tex. Aug. 10, 2016)...................................................14

*Murillo v. Reliance Std. Life Ins. Co.*,
　　2016 U.S. Dist. LEXIS 124972 (S.D. Tex. Aug. 10, 2016)....................................................11

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
　　514 U.S. 645 (1995)..............................................................................................................4

*North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
  781 F.3d 182 (5th Cir. 2015) ...................................................................9

*Pemex Exploracion y Produccion v. BASF Corp.*,
  2013 U.S. Dist. LEXIS 144166 (S.D. Tex. Sept. 30, 2013) ....................25

*Perez v. Pan Am Life Ins. Co.*,
  1995 U.S. App. LEXIS 41289 (5th Cir. Oct. 20, 1995)...........................15

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ...................................................................4

*Red Rock Invs. v. Jafco Ltd.*,
  1996 U.S. App. LEXIS 42602 (5th Cir. Feb. 16, 1996) ..........................19

*Roberts v. Reynolds & Reynolds Trucking, Inc.*,
  2016 U.S. Dist. LEXIS 85731 (N.D. Tex. July 1, 2016) .........................11

*Schouest v. Medtronic, Inc.*,
  92 F. Supp. 3d 606, 611 (S.D. Tex. 2015) .............................................18

*Sealed Appellant I v. Sealed Appellee I*,
  156 Fed. Appx. 630 (5th Cir. 2005)...........................................21, 22, 23

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ...................................................................4

*St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*,
  2011 U.S. Dist. LEXIS 155623 (S.D. Tex. Aug. 22, 2011)....................12

*U.S. ex rel. Bennett v. Boston Sci. Corp.*,
  2011 U.S. Dist. LEXIS 34745 (S.D. Tex. Mar. 31, 2011).......................17

*U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*,
  587 F. Supp. 2d 805 (E.D. Tex. 2008)......................................21, 22, 23

*U.S. ex rel. Parikh v. Citizens Med. Ctr.*,
  977 F. Supp. 2d 654 (S.D. Tex. 2013), *aff'd sub nom. U.S. ex rel. Parikh v.
  Brown*, 762 F.3d 461 (5th Cir. 2014), *opinion withdrawn and superseded on
  reh'g*, 587 Fed. Appx. 123 (5th Cir. 2014), *aff'd sub nom.* 587 Fed. Appx. 123
  (5th Cir. 2014)..................................................................................20, 23

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
  125 F.3d 899 (5th Cir. 1997) .............................................15, 21, 23, 24

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
  336 F.3d 375 (5th Cir. 2003) .................................................................15

*U.S. Bank N.A. v. Verizon Communs., Inc.*,
  761 F.3d 409 (5th Cir. 2014) ...................................................................15

*United States v. Career Opportunities, Inc.*,
  2016 U.S. Dist. LEXIS 126869 (N.D. Tex. Sept. 16, 2016)..................................14

*Ward v. CNH Am., LLC*,
  2012 U.S. Dist. LEXIS 105846 (N.D. Tex. June 7, 2012) ....................................11

*Wells v. United States Bank Nat'l Ass'n*,
  587 Fed. Appx. 158 (5th Cir. 2014)......................................................16

*Williams v. WMX Techs.*,
  112 F.3d 175 (5th Cir. 1997) .................................................................19

**Rules and Statutes**

FED. R. CIV. P. 9(b) .................................................................... *passim*

FED. R. CIV. P. 12(b)(6) ...................................................................4, 15

5 C.F.R. § 890.106.................................................................13, 14

5 U.S.C. § 8902(m)(1) ...................................................................11

29 U.S.C. § 1003(b)(1) .................................................................13

29 U.S.C. § 1144(a) ...................................................................2, 4

29 U.S.C. § 1321(b) .................................................................13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITEDHEALTHCARE SERVICES, INC.; UNITEDHEALTHCARE INSURANCE COMPANY, | § § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 3:17-CV-243 |
| NEXT HEALTH, LLC; UNITED TOXICOLOGY, LLC; MEDICUS LABORATORIES, LLC; U.S. TOXICOLOGY, LLC; AMERICAN LABORATORIES GROUP, LLC; ERIC BUGEN; AND KIRK ZAJAC, | § § § § § § § | |
| Defendants. | § § | |

**ENTITY DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants Next Health, LLC ("Next Health"), Medicus Laboratories, LLC ("Medicus"), United Toxicology, LLC ("United Toxicology or "UTox"), U.S. Toxicology, LLC ("U.S. Toxicology") and American Laboratories Group, LLC ("ALG") (collectively the "Entity Defendants")[1] file this Brief in Support of their Motion to Dismiss Plaintiffs' Complaint (the "Motion") as follows:

## I.    INTRODUCTION & SUMMARY

UHC's 81-page prolix pleading is an ill-conceived exercise in misdirection and misattribution.    Under the rubric of state law claims for fraud, conspiracy, negligent misrepresentation, money had and received, unjust enrichment, Texas Theft Liability and sham

---

[1] Defendants Medicus, United Toxicology, U.S. Toxicology and ALG are collectively referred to herein as the "Next Health Labs."

to perpetrate fraud, among others (the "Benefit Claims," as defined in Entity Defendants' Motion), UHC has sought to avoid payment for tens of millions of dollars in laboratory testing services provided by Entity Defendants for members of employee health benefit plans administered by UHC.

UHC's actual claims do not arise under Texas state law, but ERISA and FEHBA. UHC asserts its Benefits Claims in connection with healthcare claims paid under both ERISA and non-ERISA governmental employee benefit plans. ERISA expressly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (emphasis added). UHC's Benefit Claims in this matter unquestionably "relate to" employee benefit plans because UHC is fundamentally asking the Court to adjudicate Entity Defendants' rights on behalf of plan members to payment for healthcare services. Such a determination will inevitably address matters of plan coverage—an area of exclusive federal concern under ERISA. UHC itself expressly alleges that the misrepresentations purportedly made by Entity Defendants were material to its decision to pay benefits pursuant to members' plans. Because all of the healthcare claims at issue were submitted by Entity Defendants on behalf of plan members, judicial resolution of UHC's Benefit Claims cannot avoid affecting the relationship between UHC, as alleged plan "fiduciary," and plan members. UHC's Benefit Claims—to the extent that they involve claims under ERISA plans—are preempted. For claims involving governmental employee health benefit plans, UHC's Benefit Claims are likewise subject to preemption under FEHBA. Either way, UHC's Benefit Claims should be dismissed with prejudice.

UHC's Benefit Claims rely to a large extent on alleged misrepresentations regarding the medical necessity of the laboratory testing services provided by the Next Health Labs. Yet,

Entity Defendants do not make representations to UHC regarding "medical necessity." The physicians referring patient specimens for testing to the Next Health Labs exercise independent professional judgment in determining what testing services are appropriate and necessary. In submitting reimbursement claims on behalf of ERISA plan members, as confirmed by UHC's pleading, the Next Health Labs do not make any representation regarding "medical necessity." Nor do claim submissions presented by the Next Health Labs to UHC include representations regarding the "amounts owed" by plan members or the Entity Defendants' efforts to collect any alleged "patient payment responsibilities." In its Complaint, UHC has not identified any specific representation by any Next Health Lab regarding "medical necessity" or "patient payment responsibilities" in any claim submission form. Not one.

For the other misrepresentations alleged against Entity Defendants, the limited "examples" cited in UHC's Complaint hardly provide a basis for imputing "fraud" to all of the 136,000 claims UHC alleges have been paid since 2011. UHC's Complaint fails to provide the particularized allegations of "fraud" and "misrepresentation" required under Rule 9(b) of the Federal Rules of Civil Procedure. UHC's Complaint should be dismissed on this basis alone.

Beyond the wanton misdirection of its pleading—seeking relief under state law for employee benefit claims subject to ERISA, attempting to attribute physicians' "medical necessity" determinations to the Next Health Labs, inventing misrepresentations out of whole cloth and extrapolating large scale "fraud" from isolated "examples"—UHC's Complaint suffers from a litany of other substantive and procedural defects. UHC has no authority (nor has it alleged any) to assert claims on behalf of federal or state governmental employee benefit plans, not subject to ERISA. UHC has failed to allege any facts demonstrating a "meeting of the minds" necessary to establish a claim for "conspiracy to commit fraud." UHC has alleged a non-

existent claim for "alter ego" liability.  UHC's claims under the Texas Theft Liability Act and the Lanham Act are both time-barred.  Accordingly, on one or more bases, UHC's entire Complaint is subject to dismissal with prejudice.

## II.   ARGUMENT & AUTHORITIES

### A.   UHC's Benefit Claims Should Be Dismissed Under Rule 12(b)(6).

#### 1.   Standard Of Review Under Rule 12(b)(6).

Rule 12(b)(6) authorizes dismissal when a claimant fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept as true the allegations in the complaint, but should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

#### 2.   UHC's Benefit Claims Are Preempted By ERISA.

##### a.   ERISA Preempts State Laws That "Relate To" Any Employee Benefit Plan.

ERISA's express terms supersede and preempt "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ."  29 U.S.C. § 1144(a) (emphasis added).  In applying this "clearly expansive" language,[2] courts look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the effect of state law on ERISA plans."  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (citations omitted).  Among other objectives, ERISA is

---

[2] *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("The governing text of ERISA is clearly expansive.").

intended to establish a "uniform administrative scheme" to guide the processing of claims for benefits under employee benefit plans. *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (citations omitted). Within the Fifth Circuit, state law claims are preempted if "(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities — the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (citations omitted).

As a threshold matter, that UHC's Benefit Claims "relate to" ERISA plans is facially evidenced by UHC's Complaint. UHC alleges falsely that "Next Health targeted self-funded insurance plans" and devotes pages of its Complaint to explaining "health benefit plans." Doc. No. 1, at ¶¶ 6, 21-32. UHC broadly invokes this Court's jurisdiction by averring that it "asserts claims in this case that arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*" *Id.* at ¶ 8. UHC labels itself an "ERISA fiduciary." *Id.* But beyond the visceral connection between UHC's Benefit Claims and the employee benefit plans on whose behalf UHC has allegedly filed the present lawsuit, UHC's Benefit Claims clearly address an area of exclusive federal concern and directly affect the relationship between traditional ERISA entities—the plan and its beneficiaries—for purposes of ERISA preemption.

> **b.    UHC's Benefit Claims Address An Area Of Exclusive Federal Concern.**

A claim addresses an area of exclusive federal concern when the claim involves a right to receive benefits under an ERISA plan. *See, e.g.*, *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385-86 (5th Cir. 2011), *opinion reinstated in part on reh'g*, 698 F.3d 229 (5th Cir. 2012) (distinguishing for purposes of ERISA preemption between claims whose merits

depend on plan coverage and those claims that are independent of a participant's right to recover plan benefits).[3]   This is consistent with the objective of ERISA to preserve a uniform administration of claims for benefits under ERISA plans. *Aetna U.S. Healthcare, Inc.*, 468 F.3d at 242.

UHC's members' rights to receive benefits under ERISA plans, and UHC's determination of those rights as plan administrator, are integral to UHC's Benefit Claims. UHC has acknowledged that Entity Defendants are out-of-network ("OON") providers, without a direct provider agreement requiring UHC to pay for services provided to UHC's members. Doc. No. 1, at ¶¶ 35, 42, 78. Entity Defendants' claims for payment are necessarily derivative of UHC's members' rights under a given employee benefit plan. *Id.* at ¶¶ 41, 42 ("Although many plans prohibit an assignment of benefits to medical providers, most plans authorize [UHC] to make payment of the member's benefits directly to their OON providers. *OON providers, including Medicus, US Toxicology, ALG, and UTox in this case, submit paper or electronic claims to [UHC] on the member's behalf.*" (emphasis added)). The rights of a UHC member to receive payment for services performed by Entity Defendants, in turn, depends on the terms of an employee benefit plan. *Id.* at ¶ 40 ("[UHC] processes the member's claim and remits a reimbursement to the member, *pursuant to the terms of the member's plan.*" (emphasis added)).

Each claim and allegation against Entity Defendants in this matter is a denial of their entitlement to payment on behalf of UHC's members for the healthcare claims at issue. *See, e.g.*, Doc. No. 1, at ¶ 229 ("Next Health and its licensed subsidiaries made all of these false representations intentionally and hoping for [UHC] to rely on them and make payment on claims

---

[3] *See also Hollis v. Provident Life and Accident Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001) ("Hollis's state law claims address areas of exclusive federal concern because he is claiming a right to receive benefits under the terms of an ERISA plan."); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 946 (5th Cir. 1995) (finding that state law claims presenting questions that are "intricately bound up with the interpretation and administration of an ERISA plan" are preempted).

that it would not have made had it known the truth.").   On this basis alone, UHC's Benefit

Claims involve a "right to receive benefits" under ERISA plans for purposes of preemption.  *See,*

*e.g.*, Doc. No. 1, at ¶ 226.  *Cent. States, Southeast & Southwest Areas Health & Welfare Fund v.*

*Health Special Risk, Inc.*, 2013 U.S. Dist. LEXIS 83400, at *16-22 (N.D. Tex. June 13, 2013)

(reasoning that an employee benefit plan's subrogation and reimbursement claim against medical

insurers "is in reality an action to recoup previously-paid ERISA plan benefits," and "therefore

involves 'the right to receive benefits under the terms of an ERISA plan,' which is an area of

exclusive federal concern.").

Moreover, adjudication of UHC's Benefit Claims will demand inquiry into UHC's

coverage determinations for the healthcare claims at issue.  UHC's Complaint alleges that all of

the misrepresentations purportedly made by Entity Defendants were relied upon by UHC in

determining whether payment is owed under the plan for a given claim.  Doc. No. 1, at ¶ 40

("[UHC] processes the member's claim and remits a reimbursement to the member, *pursuant to*

*the terms of the member's plan*." (emphasis added)).  Specifically, UHC alleges the following:

- In submitting claims for payment, Entity Defendants allegedly were required to include specific representations regarding, *inter alia*, the medical necessity of the services rendered.[4]  UHC allegedly relied on representations of medical necessity in "*making payment of benefits*."[5] (emphasis added)

- Entity Defendants allegedly misrepresented the "medical necessity" of claims submitted to UHC in failing to disclose that such claims allegedly were induced by "kickbacks."[6]  "[T]he fact that [alleged] kickbacks underlie the services performed and billed for by Next Health and its

---

[4] Doc. No. 1, at ¶¶ 44-45, 111 (". . . When a provider submits a claim to [UHC], it represents and certifies that the contents of the claim are true, correct, and complete, and that the services billed for by the provider were determined to be medically necessary.").

[5] *Id*. at ¶¶ 45 ("This certification is material to [UHC] and [UHC] relies on it when making payment of benefits."); ¶ 123 ("These representations are material to [UHC's] determination of whether payment is owed on a claim.").

[6] *Id*. at ¶¶ 84–118 (alleging that Entity Defendants rely on "kickbacks" to induce test requests).

licensed subsidiaries is material to [UHC's] *determination of whether payment is owed for a particular claim*."[7] (emphasis added)

- Entity Defendants allegedly misrepresented the "medical necessity" of claims submitted to UHC by representing that their services were requested by a medical provider.[8] "*These representations are material to [UHC's] determination of whether payment is owed on a claim.*"[9] (emphasis added)

- Entity Defendants allegedly required physicians to request and certify the necessity of so-called "blanket" or "custom" panels of tests including one or more tests that purportedly were not medically necessary.[10] UHC allegedly relied on representations of medical necessity in "*making payment of benefits*."[11] (emphasis added)

- United Toxicology, U.S. Toxicology and ALG allegedly billed UHC for certain testing services that purportedly were performed by another provider.[12] The identity of the provider performing testing services is allegedly material to UHC's determination of whether payment is owed for a claim.[13]

- Entity Defendants allegedly represented that plan beneficiaries owed "patient payment responsibilities," which Entity Defendants allegedly made no attempt to collect.[14] "Whether [UHC's] member is financially responsible for services, as well as the amount of the member's financial responsibility, is *material to [UHC's] determination of whether a claim is payable and the amount to pay*."[15] (emphasis added)

---

[7] *Id*. at ¶ 113.

[8] *Id*. at ¶¶ 123–145 (alleging that Entity Defendants perform unauthorized testing services without requisition forms signed by the requesting physician).

[9] *Id*. at ¶ 123.

[10] *Id*. at ¶¶ 146–185 (alleging that Entity Defendants require providers to request unnecessary "custom" profiles and confirmation testing on samples); ¶ 164 ("Despite knowing that the services performed and billed for in the claim forms submitted to [UHC] were unnecessary, Next Health and its licensed subsidiaries intentionally misrepresented that the services billed for therein were medically necessary, hoping that [UHC] would rely on the false representation and make payment on the claims.").

[11] *Id*. at ¶ 45 ("This certification is material to [UHC] and [UHC] relies on it when making payment of benefits."); ¶ 123 ("These representations are material to [UHC's] determination of whether payment is owed on a claim.").

[12] *Id*. at ¶¶ 186–199 (alleging that Next Health submits claims to UHC on behalf of providers that did not perform the testing services reflected in the claim).

[13] *Id*. at ¶¶ 188, 199 ("The identity of the provider that actually performed the services billed for in a claim form is material information to [UHC] . . . . [UHC] reasonably relied on these material misrepresentations and was harmed each time it made a resulting payment to Next Health's licensed subsidiaries.").

[14] *Id*. at ¶¶ 200-220 (alleging that claims submitted by Next Health misrepresented that UHC's member owed the amounts listed on the claim and that Next Health did not collect payments from patients).

[15] *Id*. at ¶ 202.

Subject to the dismissal arguments set forth herein, UHC's assertions of reliance on alleged misrepresentations by Entity Defendants will be tested in this case. Judicial resolution of the materiality of alleged representations regarding patient assignments, physician authorizations, "custom" testing profiles, provider identification, and even "patient payment responsibilities" demands investigation into the coverage determination process UHC itself implicates in the foregoing allegations. Because UHC's Benefit Claims involve its members' rights to coverage under an ERISA plan as well as UHC's determination of that coverage, such claims "address areas of exclusive federal concern" for purposes of ERISA preemption. *Abilene Reg'l Med. Ctr. v. United Indus. Workers Health & Benefits Plan*, 2007 U.S. App. LEXIS 5231, at *8-9 (5th Cir. Mar. 6, 2007) (reasoning that the preemption analysis under *Memorial Hospital* "requires the court to 'determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan.'" (citing *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 244 (5th Cir. 1990)); *Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co.*, 2015 U.S. Dist. LEXIS 155702, at *13 (W.D. Tex. Nov. 18, 2015) ("[A]ny determination of benefits under the terms of a plan—*i.e.*, what is 'medically necessary' or a 'Covered Service'—[] fall[s] within ERISA."); *cf. North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 190 (5th Cir. 2015) ("Cigna filed its answer and counterclaims, asserting state-law claims for fraud, negligent misrepresentation, and unjust enrichment. The district court dismissed these claims, concluding they were preempted by ERISA.").

      **c.**    **UHC's Benefit Claims Directly Affect The Relationships Between Traditional ERISA Entities—The Plan And Its Beneficiaries.**

"ERISA preempts a state law when: . . . the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants

and beneficiaries." *Abilene Reg'l Med. Ctr.*, 2007 U.S. App. LEXIS 5231, at \*7-8.  The

healthcare claims for which UHC is seeking reimbursement from Entity Defendants in this

lawsuit are claims submitted on behalf of UHC's members—the beneficiaries of various

employee health plans.  Doc. No. 1, ¶ 42 ("OON providers, including Medicus, US Toxicology,

ALG, and UTox in this case, submit paper or electronic claims to [UHC] on the member's

behalf." (emphasis added)).  UHC has labeled itself a "fiduciary" of the ERISA plans at issue in

this case.  *Id*. at ¶ 25.  UHC has also called into question (1) the medical necessity of testing

performed for members;[16] (2) Entity Defendants' assignments or authorizations from plan

members to bill UHC directly;[17] (3) physician authorizations to test samples from plan

members;[18] (4) the relationship between the tests performed by Entity Defendants and "patient-

specific clinical indications, histories, or potential future treatment options and outcomes";[19] and

(5) Next Health's and its subsidiaries' conduct in "hold[ing] patients financially responsible for

the services they performed."[20]  These allegations—each of which implicates the propriety of the

coverage UHC extended to plan members for Entity Defendants' testing services—

unquestionably affects the relationship between the plan, its alleged "fiduciary" and the

members, all traditional ERISA entities.  *See, e.g.*, *Mayeaux*, 376 F.3d at 433 (reasoning that

"[i]f a medical practitioner could collaterally challenge a plan's decision not to provide benefits,

---

[16] *See, e.g.*, Doc. No. 1, at ¶ 88 ("Kickbacks result in overutilization of medical services, increased costs, unfair competition, and adverse treatment determinations, because medical providers are incentivized to make decisions based on profit, rather than the best interests of the patient.  This concern is heightened in the context of ancillary medical services, because patients have little or no input in the services and they are often performed off-site, without patients ever realizing that the services are being performed.").

[17] *Id*. at ¶ 91 ("[C]ontrary to the representations made in claims submitted to [UHC] by Next Health's licensed subsidiaries, they did not hold assignments of OON benefits and/or authorizations to bill [UHC] directly.").

[18] *Id*. at ¶ 125 ("Next Health and its licensed subsidiaries routinely submit claims to [UHC] for services performed on specimens submitted for testing with requisition forms that are not signed by the alleged requesting medical provider."); ¶ 137 ("[UHC] interviewed many of its members who provided specimens to Bugen and Zajac at The ADAR Group's clinics and none of them ever met or were treated by Dr. Rao, Dr. Kim or Dr. Parameswara.").

[19] *Id*. at ¶ 147; ¶ 157 ("Next Health's 'custom' profiles are not based on the individualized needs of patients . . . .").

[20] *Id*. at ¶ 200; ¶ 203 ("Next Health and its subsidiaries did not collect any patient payment responsibilities . . . .").

he would directly affect the relationship between the plan and its beneficiary, two traditional ERISA entities.").

Courts have routinely recognized that state law claims brought by members to recover benefits under a plan affect the relationship between traditional ERISA entities. *See, e.g.*, *Murillo v. Reliance Std. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 124972, at *13-15 (S.D. Tex. Aug. 10, 2016); *Roberts v. Reynolds & Reynolds Trucking, Inc.*, 2016 U.S. Dist. LEXIS 85731, at *12-13 (N.D. Tex. July 1, 2016). There is no logical basis to conclude otherwise when the claim is brought by an alleged plan "fiduciary" to recover benefits paid for claims submitted by a provider on behalf of a plan beneficiary. *See, e.g.*, *Cent. States, Southeast & Southwest Areas Health & Welfare Fund*, 2013 U.S. Dist. LEXIS 83400, at *16 ("[T]he court holds that state-law subrogation claim would be conflict-preempted when brought by a plan or plan fiduciary via subrogation because the claim would be transformed into one that . . . *would directly affect the relationship between the Central States plan and the Insureds* (emphasis added)); *Ward v. CNH Am., LLC*, 2012 U.S. Dist. LEXIS 105846, at *12 (N.D. Tex. June 7, 2012) ("[A] decision here for either party will affect the obligations owed to the other under an ERISA plan and, therefore, affects an aspect of the parties' relationship that is governed by ERISA."). Accordingly, because UHC's Benefit Claims both (1) address an area of exclusive federal concern; and (2) affect the relationships between traditional ERISA entities, UHC's Benefit Claims are conflict preempted under ERISA and should be dismissed with prejudice.

### 3.    UHC's Benefit Claims Are Preempted Under FEHBA.

Like ERISA, the Federal Employee Health Benefit Act ("FEHBA") contains its own preemption clause whereby, "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which

relates to health insurance or plans."  5 U.S.C. § 8902(m)(1).  Given that both statutes preempt state laws that "relate[] to" employee benefit plans, preemption under FEHBA is analyzed in the same manner as preemption under ERISA.  *See, e.g.*, *Burkey v. Gov't Employees Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir. 1993) (relying on ERISA precedent to determined that a state law claim for penalties was preempted under FEHBA); *see also Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*, 2012 U.S. Dist. LEXIS 102789, at *6 (S.D. Tex. July 24, 2012) ("The analysis for FEHBA preemption is similar to that of ERISA preemption discussed above.").

For all of the same reasons that UHC's Benefit Claims are preempted by ERISA, *see supra* Part II(A)(2), UHC's Benefit Claims are also preempted under FEHBA to the extent that UHC seeks reimbursement for claims submitted by Entity Defendants in connection with any federal employee health benefit plan.  *See, e.g.*, *Health Care Serv. Corp. v. Methodist Hosps.*, 2015 U.S. Dist. LEXIS 54357, at *37-44 (N.D. Tex. Jan. 28, 2015) (holding that a provider's claim for penalties assessed on delayed payment of health insurance claims was preempted under FEHBA); *see also St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, 2011 U.S. Dist. LEXIS 155623, at *71-72 (S.D. Tex. Aug. 22, 2011) (holding that state law claims for breach of contract, unjust enrichment, quantum meruit, suit on account, and alleged violations of the Texas Theft Liability Act brought by out-of-network providers seeking payment for claims submitted on behalf of members of federal employee benefit plans were preempted under FEHBA).

### 4. UHC Is Not Authorized To Pursue Claims Against Entity Defendants On Behalf Of Any Federal Employee Health Benefit Plan.

Federal regulations circumscribe both the substance and procedure governing claims arising out of federal employee health benefit plans.  For example, while plan beneficiaries are authorized to bring disputes over coverage or unpaid benefits against the Office of Personnel

Management ("OPM") in federal court, neither FEHBA nor enabling regulations promulgated by the OPM creates federal court jurisdiction over carrier claims for reimbursement or subrogation. *See, e.g., Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 686-687, 696 (2006) ("Had Congress found it necessary or proper to extend federal jurisdiction further, in particular, to encompass contract-derived reimbursement claims between carriers and insured workers, it would have been easy enough for Congress to say so.").

The operative OPM regulations specifically address a carrier's "entitlement to pursue subrogation and reimbursement recoveries." 5 C.F.R. § 890.106.  These regulations expressly limit carriers' rights to pursue and receive subrogation or reimbursement recoveries upon the satisfaction of the following two conditions: (1) "[t]he covered individual has received benefits or benefit payment as a result of an illness or injury"; and (2) "[t]he covered individual has accrued a right of action against a third party for causing that illness or injury; or has received a judgment, settlement or other recovery on the basis of that illness or injury; or is entitled to receive compensation or recovery on the basis of the illness or injury, including from insurers of individual (non-group) policies of liability insurance that are issued to and in the name of the enrollee or a covered family member."  *Id.* at § 890.106(c)(2).

UHC's Complaint does not allege (nor can it) that these conditions have been satisfied as a predicate to any claim against Entity Defendants on behalf of or relating to any federal employee health benefit plan.  While UHC alleges standing to bring "ERISA Actions" on the purported basis that "it serves as an ERISA fiduciary to many ERISA Plans," Doc. No. 1, at ¶¶ 8, 25, 293, 299, UHC does not allege fiduciary status or standing to assert claims on behalf of any federal employee health benefit plan or any other "governmental plan" excepted from ERISA. *See Hightower v. Texas Hosp. Ass'n*, 65 F. 3d 443, 447 (5th Cir. 1995) ("Although recognized as

a 'comprehensive and reticulated statute,' Congress excluded certain plans from ERISA coverage. 29 U.S.C. section 1003(b)(1) excluded governmental plans from ERISA coverage under Title I." (citing 29 U.S.C. § 1003(b)(1); 29 U.S.C. § 1321(b))); Doc. No. 1, at ¶ 24 ("The health benefit plans sponsored by governmental employers and other employers and organizations that fall within an ERISA safe harbor, are exempted from ERISA"). Nor can UHC identify any other law or regulation that would authorize UHC's assertion of such claims against Entity Defendants. *See generally* 5 C.F.R. § 890.106. Accordingly, to the extent that UHC's Benefit Claims purport to include claims on behalf of federal or state government employee benefit plans,[21] such claims should be dismissed with prejudice.

### 5.    UHC's "Conspiracy To Commit Fraud" Claim Fails To State A Claim Upon Which Relief Can Be Granted.

Under Texas law, conspiracy to commit fraud requires, among other things, "a meeting of the minds of two or more persons on the object or course of action." *United States v. Career Opportunities, Inc.*, 2016 U.S. Dist. LEXIS 126869, at *21 (N.D. Tex. Sept. 16, 2016) (citing *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996)); *see also Murex, LLC v. GRC Fuels, Inc.*, 2016 U.S. Dist. LEXIS 105391, at *30 (N.D. Tex. Aug. 10, 2016) ("The 'meeting of the minds' element requires proof of intent to participate in the purpose of the conspiracy." (citations omitted)).

UHC's Complaint alleges in conclusory fashion that Next Health, Bugen and Zajac, as alleged co-conspirators, "agreed on the object of the conspiracy," Doc. No. 1, at ¶ 245, but the Complaint is completely devoid of other facts indicating that any alleged conspirator consciously intended or committed to any scheme to defraud UHC. There are no allegations that Next

---

[21] Doc. No. 1, at ¶ 6 (alleging that "Next Health targeted self-funded plans offered by . . . the Texas Employee Retirement System, and various other Texas governmental entities"); ¶ 21 (alleging that UHC provides administration to a variety of health care benefit plans, including "government-sponsored benefit plans").

Health, Bugen and Zajac met or even discussed any so-called "objective" to "obtain funds from commercial insurers for the performance of unnecessary drug and PG testing services." *Id.* at ¶ 245. Nor are any details of any meeting, discussions or decisions, if any, included anywhere in the Complaint. Accordingly, UHC's "Conspiracy to Commit Fraud" claim fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6). *See, e.g.*, *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014) (dismissing a conspiracy claim upon finding that plaintiff's "allegations do not make it plausible that the NCAA and NFHS adopted a conscious commitment to a common scheme designed to achieve an unlawful objective" (citations omitted)); *Hey v. Irving*, 1998 U.S. App. LEXIS 39439, at *4 (5th Cir. Oct. 2, 1998) ("General conclusory charges of conspiracy with 'no specific allegation of facts tending to show a prior agreement' cannot survive a motion to dismiss.").

### 6. UHC's "Alter Ego" Claim Is Not A Separate Cause Of Action.

UHC has asserted "Alter Ego Liability" as a separate cause of action. Doc. No. 1, at ¶ 283-288. "Alter ego" is not a recognized claim under Texas law and should be dismissed with prejudice. *U.S. Bank N.A. v. Verizon Communs., Inc.*, 761 F.3d 409, 442 (5th Cir. 2014); *Perez v. Pan Am Life Ins. Co.*, 1995 U.S. App. LEXIS 41289, at *4 (5th Cir. Oct. 20, 1995) ("Alter ego is not a separate cause of action . . . .").

## B. UHC's Complaint Fails To Allege Fraud And Misrepresentation With Particularity Under Rule 9(b).

### 1. Rule 9(b) Requires Allegations Of Who, What, When And Where For Each Alleged Misrepresentation.

In order to satisfy Rule 9(b), a complaint must state with particularity the circumstances constituting fraud, meaning the plaintiff must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the 'who, what, when, where, and

how' of the alleged fraud." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (internal citations removed).  Pleadings of fraud cannot be based on conclusory allegations or speculation.  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  Claims based on allegations that fail to allege fraud with particularity are subject to dismissal.  *Wells v. United States Bank Nat'l Ass'n*, 587 Fed. Appx. 158, 161 (5th Cir. 2014) ("For claims of fraud, dismissal is appropriate where the plaintiff fails to state with particularity the circumstances constituting the alleged fraud.").

     **2.**     **UHC's Complaint Does Not Allege Particularized Misrepresentations Regarding "Medical Necessity" Or "Patient Payment Responsibilities."**

Each of the misrepresentations allegedly made by Entity Defendants, which in turn form the alleged predicate for UHC's Benefit Claims, were purportedly made in connection with the submission of claims for laboratory services. *See, e.g.*, Doc. No. 1, at ¶¶ 91 (alleging misrepresentations "in the claims submitted to [UHC] by Next Health's licensed subsidiaries"); *see also, e.g.*, ¶¶ 92-93, 111, 122, 138-39, 141-144, 164-170, 182-183, 186-187, 189-199, 203-204, 212-218, 223-230, 252-254, 272-274, 298.  UHC separately alleges that OON providers, including Next Health, submit claims on standardized paper and electronic forms. Doc. No. 1, at ¶¶ 42-43.  UHC further asserts that in each claim submitted for payment, Entity Defendants make various representations, including, *inter alia*, representations regarding (1) "the billing provider's information"; (2) "the service provider's information"; (3) "whether the patient has authorized [UHC] to make payment of his or her benefits to the billing provider"; (4) "the *diagnoses* that support the medical necessity of the services rendered"; and (5) the "*amount charged* to the member for each service." *Id.* at ¶ 44 (emphasis added).

Yet, for most of the "misrepresentations" alleged by UHC, there is no overlap between the information UHC avers is included on the standardized claim form and the alleged

misrepresentations that form the basis of UHC's Benefit Claims. Specifically, attached as Exhibit "A" is a chart of the misrepresentations alleged in UHC's Complaint that do not correspond to the information UHC separately alleges is represented in the claim submission forms presented by Next Health for payment. *See* Ex. A (App. 02-03); *compare* Doc. No. 1, at ¶¶ 42-44. Broadly speaking, the standard claim form does not contain, and UHC's allegation fail to plead, any representation by the Entity Defendants regarding (1) payments allegedly made in exchange for inducing testing referrals, Doc. No. 1, at ¶ 93; (2) the medical necessity of the testing services rendered or the reason such services were requested by the referring physician, *id*. at ¶¶ 111, 123, 164, 168-170, 178, 182-183, 212-213, 223, 226, 255, 272; or (3) the "amount owed" by any UHC member to Next Health or Next Health's efforts to collect any "patient payment responsibilities." *Id*. at ¶¶ 203-204, 212-218, 223-224, 255, 272, 274.

Moreover, the actual claim forms referenced in UHC's Complaint do not include the representations allegedly made by Entity Defendants, which form the basis for UHC's Benefit Claims, including broad representations regarding "medical necessity" or the "amount owed" by the plan member. *See, e.g.,* Ex. B (App. 05) (CMS Form 1500). Instead, the only "medical necessity" representation made in such forms expressly relates to a "claim for payment from federal funds," *i.e.*, MEDICARE or TRICARE claims, or for "MEDICAID CLAIMS." *Id*. "Medical necessity" is decided, not by Entity Defendants, but by the referring physician "exercising independent professional judgment based on the knowledge of [a] particular patient[]." *U.S. ex rel. Bennett v. Boston Sci. Corp.*, 2011 U.S. Dist. LEXIS 34745, at *87 (S.D. Tex. Mar. 31, 2011); *see also* Doc. No. 1, at ¶ 69. Absolutely no representation is made in the standardized claim forms regarding "amounts owed" or "amounts charged" to a plan member or the provider's efforts to collect any "patient payment responsibilities." *Id*.

Because Next Health never made any representation regarding the medical necessity of the services requested by referring physicians, Next Health never had a duty to disclose any alleged "kickback" scheme, which UHC alleges compromised the referring physicians' medical necessity determination. *See, e.g.*, Doc. No. 1, at ¶¶ 112, 115-118, 212, 232, 235, 236 (alleging a failure to disclose that services billed in various claims were induced by alleged "kickbacks"); *see also generally Cordero v. Avon Prods.*, 629 Fed. Appx. 620, 626 (5th Cir. 2015) ("Under Texas law, fraud by non-disclosure is only implicated when a party has a duty to speak, yet deliberately remains silent."); *In re Margaux Warren Park Partners, Ltd.*, 2009 Bankr. LEXIS 4128, at *16 (Bankr. E.D. Tex. Dec. 15, 2009) ("[W]hile Plaintiffs have identified the rule that a partial disclosure may give rise to a duty to make full disclosure even absent a fiduciary relationship, Plaintiffs have not alleged facts supporting such a partial disclosure or creation of such a duty.").

Other portions of UHC's Complaint appear to take issue with (1) representations of "medical necessity" allegedly *made by the physicians* requesting testing services from the Next Health Labs; (2) instructions allegedly given by the Next Health Labs *to such referring physicians* regarding what testing should be requested; and (3) communication by and between *the Next Health Labs, referring physicians and UHC's members* regarding "patient payment responsibilities." *See, e.g.*, Doc. No. 1, at ¶¶ 146-154, 160-161, 172-173, 179, 205-212, 273.

To the extent that with respect to the allegations in Paragraphs 93, 111-112, 115-118, 123, 146-154, 160-161, 164, 168-170, 172-173, 178-179, 182-183, 203-204, 205-218, 223-224, 226, 232, 235, 236, 255, 272-273, 274 and 298, UHC has failed to allege any actual misrepresentation by Entity Defendants to UHC, UHC's Complaint fails to allege fraud with particularity as required by Rule 9(b). *See, e.g.*, *City of Clinton v. Pilgrim's Pride Corp.*, 632

F.3d 148, 153-155 (5th Cir. 2010) (affirming Rule 9(b) dismissal of fraud allegations based on statements that did not contain any material facts); *Schouest v. Medtronic, Inc.*, 92 F. Supp. 3d 606, 611 (S.D. Tex. 2015) ("Fifth Circuit 'precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" (citations omitted)). UHC's Benefit Claims each depend on those allegations of fraud for which UHC's pleading lacks particularity. *See, e.g.*, Doc. No. 1, at ¶¶ 223, 224, 226, 232-235, 242-243, 254-255, 257, 260, 261, 263, 265, 272, 273, 274, 277, 281, 289, 296, 297, 298, 300, 301. Accordingly, UHC's Benefit Claims should each be dismissed under Rule 9(b). *See generally Red Rock Invs. v. Jafco Ltd.*, 1996 U.S. App. LEXIS 42602, at *9 (5th Cir. Feb. 16, 1996) ("[T]he plaintiffs' allegations failed to allege fraud and conspiracy to defraud with sufficient particularity to escape Fed. R. Civ. P. 9(b)'s pleading standard for those offenses."); *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) (applying Rule 9(b) to a claim for "negligent misrepresentation" based on the same allegations as plaintiffs' fraud claims).

### 3.   UHC's Complaint Fails To Allege Other "Misrepresentations" With Particularity.

In addition to alleging non-existent misrepresentations regarding "medical necessity" and "patient payment responsibilities," UHC's Complaint alleges that Entity Defendants (1) did not hold patient assignments of OON benefits as represented in claim submissions, Doc. No. 1, at ¶¶ 91-92, 227, 255, 259, 272, 300, 301; (2) misrepresented the physician authorizations for claims submitted to UHC, *id*. at ¶¶ 123-145; (3) misrepresented the identity of the provider of the testing services for which payment was claimed from UHC. *Id*. at ¶¶ 186-199. These allegations too fall short under Rule 9(b).

### a.    Patient Assignments

In its entire Complaint, UHC includes only two examples of claims submitted by Medicus, for which the patient assignment allegedly belonged to ALG.  Doc. No. 1, at ¶ 91-92. No details of the "who, what, when, where and how" of any purported misrepresentation regarding patient assignments by United Toxicology, U.S. Toxicology or ALG is to be found anywhere in the Complaint.  Two claims submitted by one entity hardly provide the requisite particularly for purposes of 9(b) to assert fraud or misrepresentation against a group of entities alleged to have submitted 136,000 claims to UHC since 2011.  *Id*. at ¶ 82; *see, e.g.*, *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 671 (S.D. Tex. 2013), *aff'd sub nom. U.S. ex rel. Parikh v. Brown*, 762 F.3d 461 (5th Cir. 2014), *opinion withdrawn and superseded on reh'g*, 587 Fed. Appx. 123 (5th Cir. 2014), *aff'd sub nom.* 587 Fed. Appx. 123 (5th Cir. 2014) (in fraudulent billing scheme involving multiple defendants, court analyzed each defendant group separately and found that, as to hospitalists, "two examples of situations in which the hospitalists . . . referred patients to the Citizens cardiologists in exchange for employment and related benefits" and general allegations that hospitalists billed and obtained payment under illegal contracts were insufficient to satisfy Rule 9(b)).

Indeed, a sister court has already concluded that UHC's use of isolated "examples" to allege a fraudulent billing scheme involving multiple provider defendants is insufficient.  *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, 2015 WL 12777091, at *10 (C.D. Cal. Feb. 12, 2015) ("While the [complaint] alleges claims submitted by a few of the Counterclaim Defendants, generalized allegations that all of the Counterclaim Defendants participated in fraudulent conduct are insufficient. . . . United cannot generally assert that everyone did everything on the basis of the examples it presents without specifying the roles that each Counterclaim Defendant played in carrying out the purported fraud.").

### b.    Physician Authorizations

UHC's allegations that Next Health engaged in widespread misrepresentations regarding physician authorizations implicating 136,000 claims valued at more than $100 million over a six-year period is based exclusively on (1) alleged conduct by the ADAR Group involving three named doctors; and (2) a "random sample" of an unspecified number of claims unrelated to ADAR.  Doc. No. 1, at ¶¶ 123-145.  The examples in UHC's "sample" amount to no more than ten (10) claims totaling $5,288.69 in payments.  *Id*. at ¶ 143.  These allegations alone fail to allege with particularity the large scale fraud and misrepresentation of which Next Health is accused in this lawsuit.  *See Sealed Appellant I v. Sealed Appellee I*, 156 Fed. Appx. 630, 631 (5th Cir. 2005) (allegations of fraudulent ambulatory bills totaling $200 million over five years were merely "extrapolations and good faith belief" of relator's one-year audit and were not sufficiently pled under Rule 9(b) because "the complaint does not identify particular invoices containing false statements by number, date, or otherwise").[22]

### c.    Provider Identification

With regard to UHC's allegation that Entity Defendants misrepresented the identity of the lab providing PG testing services, while UHC generally alleges submission of thousands of PG tests by allegedly uncertified labs, Doc. No. 1, at ¶¶ 190, 194, 196, UHC's Complaint only references fourteen (14) claims (with payments of $72,538.79), relating to a single referring physician, with any detail regarding dates, claim numbers and amounts.  *Id*. at ¶¶ 191-93.  These

---

[22] *See also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (rejecting relator's claim that there was reasonable probability, based on statistical studies performed by the government, that forty percent of the defendants' medical claims violated the anti-kickback law or were not medically necessary); *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 826 (E.D. Tex. 2008) (allegations against pharmaceutical company that kickbacks were occurring over many years failed to satisfy Rule 9(b): "The complaint does not describe any grants, rebates, kickbacks or other financial incentives given to OHP after March 1999. . . . So, his factual allegations require an inference that BMS submitted false Best Price reports from April 1999 through January 2002. But, the factual basis he has provided is insufficient to make that inference reasonable.").

isolated examples are simply insufficient to meet the particularity threshold for a fraud allegedly involving more than 8,450 claims resulting in payments of $12,708,039.52. *Compare id.* at ¶¶ 190, 194, 196; *see also Appellant I*, 156 Fed. Appx. at 631; *Thompson*, 125 F.3d at 903.

### d.    Medical Necessity

Even with respect to "medical necessity," UHC's Complaint does not, in relying exclusively on alleged conduct by the ADAR Group (representing approximately $11 million in claim value) and IMR (representing an unspecified claim value), justify an inference of fraud or "kickbacks" as to 136,000 claims submitted over six years and totaling more than $100 million in claim payments by UHC. *See* Doc. No. 1, at ¶ 82 (alleging payments of $100 million on 136,000 claims submitted since 2011); ¶¶ 94-117 (alleging wrongful conduct by ADAR and IMR); *see also Foster*, 587 F. Supp. 2d at 826 (in alleged fraudulent billing scheme over many years, inference of fraud beyond a limited number of claim examples was not sufficient to satisfy Rule 9(b)).

### e.    "Custom" Testing Profiles

UHC's assertion of so-called "standing orders" for "custom" testing profiles relies on information relating to all of eighty-four (84) claims representing $288,005.20 in claims payments primarily in 2016. Doc. No. 1, at ¶ 165 (one claim for $8,797.86); ¶ 166 (one claim for $8,797.86); ¶ 167 (nine claims totaling $22,528.80); ¶ 169 (two claims totaling $6,712.19); ¶ 170 (fourteen claims totaling $29,580.88); ¶ 173 (twenty-seven claims totaling $103.130.80); ¶ 178 (twenty-one claims totaling $59,476.07; ¶ 180 (nine claims totaling $48,980.70). This "sample" set represents 0.06% of the 136,000 claims or 0.29% of the more than $100 million in total claim payments UHC alleges fraudulently involved so-called "custom" panels. Moreover, for the "examples" cited in the Complaint, UHC fails entirely to allege any facts supporting its assertion that such claims were based on a "standing order for a custom profile of tests." *Id.* at

¶¶ 165, 166, 167, 169, 170, 173, 178, 180.  UHC's perfunctory reliance on a mere sliver of samples, unsubstantiated by specific facts showing the unwarranted use of "custom" profiles, does not comply with Rule 9(b)'s particularly requirement.  *Appellant I*, 156 Fed. Appx. at 631 (allegations of fraudulent ambulatory bills totaling $200 million over five years were merely extrapolations of relator's one-year audit and did not satisfy Rule 9(b)); *Parikh*, 977 F. Supp. 2d at 671 (requiring "the pleading of particular details of a scheme to submit false claims" under Rule 9(b) because "standing alone, raw bills—even with numbers, dates, and amounts—are not fraud without an underlying scheme to submit the bills for unperformed or unnecessary work").

UHC's gratuitous reliance on "information and belief" to assert that "all" claims were subject to the misrepresentations addressed immediately above does not satisfy Rule 9(b).  Doc. No. 1, at ¶¶ 118, 144, 184; *Thompson*, 125 F.3d at 903 (pleading information and belief is not a "license to base claims of fraud on speculation and conclusory allegations"); *Foster*, 587 F. Supp. 2d at 820 (pleading "upon information and belief" requires pleading a factual basis for the belief, which also must satisfy Rule 9(b)).  As a result, all of UHC's Benefit Claims should be dismissed.  *Appellant I*, 156 Fed. Appx. at 634 (dismissing FCA claims pled on information and belief under Rule 9(b) because plaintiff did not allege a sufficient factual basis for his false billing claims and the information was within his possession).

### f.    Generic Allegations Of Fraud & Misrepresentation

Other allegations in UHC's Complaint simply allege generic "false and misleading information," without specifying the content or other details regarding such alleged misrepresentations.  *See, e.g.*, Doc. No. 1, at ¶¶ 89, 122; *see also id.* at ¶ 161 (alleging that "[e]ach 'custom' profile set-up form is intended to be used in support of false or fraudulent claims under an insurance policy"); ¶ 181 (alleging that the OIG "takes the position that an individual who knowingly causes a false claim to be submitted may be subject to sanctions or

remedies available under civil, criminal, and administrative law"); ¶ 219 (alleging "submissions of insurance claims that contain false and misleading information" and "constitute insurance fraud"); ¶ 222 (alleging "material false representations and/or concealing and/or failing to disclose material facts in each of the claims"); ¶ 252 (alleging "numerous material misrepresentations" in claims submitted to UHC). Such vague and generalized assertions of fraud, along with the claims reliant on such allegations, must be dismissed under Rule 9(b). *See Thompson*, 125 F.3d at 903 (pleadings of fraud cannot be based on conclusory allegations or speculation).

**C.    UHC's Lanham Act And Texas Theft Liability Act Claims Are Barred By Limitations.**

### 1.    UHC's Lanham Act Claim Is Time Barred.

UHC's "false association" Lanham Act claim is premised on alleged confusion purportedly created by the name "United Toxicology" and its so-called similarity to "UnitedHealthcare." Doc. No. 1, at ¶¶ 302-311. United Toxicology, LLC first registered with the Texas Secretary of State in 2011. Ex. C-1 (App. 13). United Toxicology, LLC has been submitting claims to UHC and getting paid for such claims since at least 2012. *See, e.g.*, Ex. C-2 (App. 16-17); *accord* Doc. No. 1, at ¶ 82 (alleging that "Next Health, through its licensed subsidiaries, has submitted more than 136,000 claims to [UHC] for testing services since 2011").

Lanham Act claims are subject to a four-year limitations period. *See, e.g.*, *Jaso v. Coca Cola Co.*, 435 Fed. Appx. 346, 356 (5th Cir. 2011) (citing *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859-60 (N.D. Tex. 2009) ("In Texas, a Lanham Act violation is governed by the four year statute of limitations under Texas law."))). Because UHC knew or should have known of any alleged "false association" as early as 2012 but did not file suit in this case until January 26, 2017, UHC's Lanham Act claim is time barred and should be dismissed with prejudice.

2.    **UHC's Texas Theft Liability Act Claim Is Untimely.**

Claims under the Texas Theft Liability Act ("TTLA") are subject to a two-year limitations period. *Jeanbaptiste v. Wells Fargo Bank, N.A.*, 2014 U.S. App. LEXIS 21468, at *3 (5th Cir. Nov. 7, 2014) ("A two-year limitations period applies to conversion and TTLA claims."). The accrual of limitations for TTLA claims is not tolled by the discovery rule. *Id.* at *5 ("While the Supreme Court of Texas has not yet addressed the application of the discovery rule to wrongful foreclosure and TTLA claims, Texas courts of appeal have uniformly refused to apply the discovery rule to them.").

UHC alleges that Entity Defendants have submitted allegedly fraudulent claims for payment since 2011. Doc. No. 1, at ¶ 82 (alleging that "Next Health, through its licensed subsidiaries, has submitted more than 136,000 claims to [UHC] for testing services since 2011"). To the extent that UHC's claim for alleged violations of the Texas Theft Liability Act accrued as early as 2011, this claim is barred by the applicable two-year limitations period and should be dismissed with prejudice. *Pemex Exploracion y Produccion v. BASF Corp.*, 2013 U.S. Dist. LEXIS 144166, at *160-162 (S.D. Tex. Sept. 30, 2013) (barring alleged violations of the TTLA arising from any act committed more than two years prior to the filing of suit).

### III.    CONCLUSION

WHEREFORE, Defendants Next Health, LLC, Medicus Laboratories, LLC, United Toxicology, LLC, U.S. Toxicology, LLC and American Laboratories Group, LLC ("ALG") respectfully request that this Court grant their Motion to Dismiss Plaintiffs' Complaint and enter an Order (1) granting Entity Defendants' Motion; (2) dismissing Plaintiffs' Complaint in its entirety; and (3) granting Entity Defendants all other relief to which they may be justly entitled.

Respectfully submitted,


/s/ Ernest Martin, Jr.
Ernest Martin, Jr.
Texas Bar No. 13063300
ernest.martin@haynesboone.com
Micah Skidmore
Texas Bar No. 24046856
micah.skidmore@haynesboone.com
Christopher A. Rogers
Texas Bar No. 24051264
chris.rogers@haynesboone.com
Nicole Sommerville
Texas Bar No. 24068637
nicole.somerville@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
214-651-5000 (Telephone)
214-651-5940 (Telecopier)

**ATTORNEYS FOR ENTITY DEFENDANTS NEXT HEALTH, LLC, MEDICUS LABORATORIES, LLC, UNITED TOXICOLOGY, LLC, U.S. TOXICOLOGY, LLC AND AMERICAN LABORATORIES GROUP, LLC**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion has been served on the following counsel in accordance with the Federal Rules of Civil Procedure on this 9th day of March, 2017:

Stephen W. Mooney
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia  30326


/s/ Ernest Martin, Jr.
Ernest Martin, Jr.

16151970_3