IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


**UNITEDHEALTHCARE SERVICES,
INC., UNITEDHEALTHCARE
INSURANCE COMPANY,**

**Plaintiffs,**                                    Civil No.: 3:17-CV-0243-M

**vs.**


**NEXTHEALTH LLC, et al.**

**Defendants.**
_____/

<u>**UNITEDHEALTHCARE SERVICES, INC. AND UNITED HEALTHCARE INSURANCE
COMPANY'S RESPONSE TO EMERGENCY MOTION FOR PROTECTIVE ORDER**</u>

WEINBERG, WHEELER,  HUDGINS
GUNN & DIAL, LLC

<u>/s/ *Stephen W. Mooney*</u>
Stephen W. Mooney
Texas Bar No.: 14319100
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Telephone: 404-876-2700
Facsimile: 404-875-9433
Email: smooney@wwhgd.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................... 1

II.     FACTS OMITTED BY NEXT HEALTH ................................................... 4

III.    ARGUMENT ......................................................................................... 8

      A.    The Court should not enter a Rule 26 protective order as UHC has pre-existing contractual rights with which Next Health cannot interfere simply because litigation is also pending.......................................... 9

      B.    The Court should not enter a Rule 26 protective order as Next Health's assertion of irreparable future business harm, upon information and belief, amounts to a fraud on the Court. .................................................. 13

      C.    The Court should not enter a Rule 26 protective order as Next Health cannot demonstrate any tangible business harm that UHC's exercise of contractual rights will cause.................................................... 14

      D.    The Court should not enter a Rule 26 protective order as UHC's letters do not request protected health information, and even to the extent they did, UHC is a Covered Entity that is authorized to receive PHI from another Covered Entity pursuant to HIPAA.................................................. 16

IV.     CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Aktienge-Sellschaft v. Westburg,* 260 F. Supp. 636 (E.D. Pa. 1966) ............................................. 10

*Azim v. Tortoise Capital Advisors,* 2015 U.S. Dist LEXIS 16402 (D. Kan. Jan. 14, 2015)......... 10

*Cazorla v. Koch Foods of Miss., L.L.C.,* 838 F. 3d 540 (5th Cir. 2016).......................................... 9

*Commodity Futures Trading Com. V. Rosenthal & Co.,* 74 F.R.D. 454 (N.D. Ill. 1977) ........... 10

*Crosswhite v. Lexington Ins. Co.,* 321 Fed. Appx. 365 (5th Cir. Tex. Apr. 1, 2009) ..................... 9

*Gottstein v. National Ass'n for the Self Employed*, 186 F.R.D. 654 (D. Kan. 1999)............... 8, 16

*Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.,* 2006 U.S. Dist. LEXIS 97573 (S.D. Fla. July 11, 2006) ........................................................................................................................................ 10

*May Coating Techs., Inc. v. Ill. Tool Works,* 157 F.R.D. 55 (D. Minn. 1994) ............................. 11

*Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550-51 (6th Cir. 2004).................................... 14

**Rules**

45 CFR 160.103 ...................................................................................................................... 7, 16

45 CFR 164.506(c)................................................................................................................... 7, 17

45 CFR Part 493 *et seq.* .......................................................................................................... 7, 14

Federal Rule of Civil Procedure 26(c) ................................................................................. 8, 9, 13

Federal Rule of Civil Procedure 37(a)(5) ............................................................................... 2, 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**UNITEDHEALTHCARE SERVICES,**
**INC., UNITEDHEALTHCARE**
**INSURANCE COMPANY,**

**Plaintiffs,**                                    **Civil No.: 3:17-CV-0243-M**

**vs.**

**NEXTHEALTH LLC, et al.**

**Defendants.**
_____/

**UNITEDHEALTHCARE SERVICES, INC. AND UNITED HEALTHCARE INSURANCE**
**COMPANY'S RESPONSE TO EMERGENCY MOTION FOR PROTECTIVE ORDER**

      UnitedHealthcare Services, Inc. and United Healthcare Insurance Company (hereinafter "UHC") file this Response to the Next Health Defendants' (hereinafter "Next Health") Emergency Motion for Protective Order, stating as follows:

## I.  INTRODUCTION

      Next Health's Emergency Motion for Protective Order intentionally withholds key, and in this instance dispositive, information from the Court and is unwarranted by clear, undisputed facts.  As set forth below, the Emergency Motion should be denied, and the Court should order Next Health and/or its attorneys to pay UHC its reasonable attorney's fees in opposing this Motion.

      UHC's letters to physicians were not sent under the guise of this litigation's discovery process, formal or informal.  Rather, pursuant to UHC's Network Physician Contracts with each physician, UHC exercised its contractual right to audit certain claims and administrative issues.

1

UHC's business relationships with these physicians all pre-exist this lawsuit and each contemplate a sharing of information between the parties that does not require issuance of any litigation-related subpoenas.  UHC specifically informed Next Health of this contractual right and justification prior to the meet and confer on this issue, during the meet and confer, and again after the meet and confer.  Yet Next Health's attorneys ignored their duty of candor to this Court and intentionally omitted this key fact from the emergency motion they filed late last week – presumably because the fact that UHC requested information from physicians pursuant to independent contractual rights renders all of the authority cited by Next Health inapposite, thereby making Next Health's entire pleading frivolous, and subject to Rule 37(a)(5) sanctions.

Pursuant to rights set forth under each provider's Network Physician Contract, UHC can request information necessary to conduct a reasonable audit of the provider's compliance with the Network Physician Contract.  These contractual rights exist in the absence of litigation, and, conversely, are not restricted because of the presence of litigation.  Stated another way, UHC has contractual rights to access the requested documents even in the complete absence of a lawsuit.  Next Health provides no authority where a Court has limited a party's ability to communicate with its own contractual partners under rights that exist completely independent of litigation.

Moreover, the hypocrisy of Next Health's requested relief must not be lost.  Next Health cries that UHC is interfering with Next Health's business relationships. However, Next Health's very own implication of these network physicians as potential sources of billing impropriety in publicly filed motions and discovery is what prompted UHC's internal audit.  Now, having prompted this audit with its own accusations, it is in fact Next Health that is seeking to interfere with UHC's contractual audit rights.

Next Health speculates that UHC's contractual audit request will "destroy Entity Defendant's Business Relationships with their Physician Clients," thus causing irreparable harm to Next Health. Again, Next Health misleads the Court by omitting key facts. UHC has learned from the Centers for Medicare and Medicaid Services (CMS) that all four of Next Health's licensed laboratories are either not operating, or are in the process of having their CLIA certifications suspended or revoked for failing basic proficiency tests. Laboratories must have a valid CLIA number from CMS in order to operate. Once CMS finalizes its suspensions, each of Next Health's laboratories must reject any laboratory testing requests from physicians because CMS has determined that they are no longer allowed to perform such work. Failing to adhere to minimum standards enforced by the regulatory body that controls clinical laboratories is what has "destroyed" Next Health's business relationships with its physician clients. Not the UHC contractual audit letter that followed.

Next Health also takes the disingenuous position that UHC's contractual audit letter is requesting protected health information and information protected by the physician-patient privilege. A simple reading of the requests shows that Next Health's arguments defy logic. More importantly, however, Next Health fails to inform the Court – or fails to understand – that UHC, like any health care plan, is itself a Covered Entity under HIPAA. It is not a violation of either HIPAA or any physician-patient privilege for a network provider to provide an insurer with information about the insurer's members. Providers routinely submit patient identities and medical information to insurers as part of the insurance claim process. While disclosure of such information would be a violation of HIPAA and privilege protections if it were made to a random stranger on the street, it is a necessary, and universally contemplated, part of our healthcare system. In fact Next Health itself, in bilking UHC out of hundreds of millions of

3

dollars, had to routinely submit this very type of information to UHC in order to secure payments. It rings hollow that Next Health now claims that it is trying to valiantly protect patients when it consistently used patient information to defraud UHC for years. Indeed, patients are not opposed to UHC's efforts to investigate the scope and extent of Next Health's fraud. Rather, they have applauded UHC's efforts to stop Next Health from using them as pawns in a corrupt scheme. As one patient stated, "[t]hey have made my life miserable … I am so happy you are suing these corrupt men!!! Good luck and I will be praying that you win the lawsuit!!!! I am so happy that they have finally been exposed." *See* Email from Patient (Redacted) to Mooney, attached hereto as Exhibit 1.

## II.      FACTS OMITTED BY NEXT HEALTH

1.      UHC has pre-existing contractual relationships with the providers to whom it has sent contractual audit letters. *See e.g.* Network Physician Contract of Cannella effective July 2006, (rate information on pages 11 and 12 removed), attached hereto as Exhibit 2.

2.      UHC did not learn the identities of these providers through this litigation and did not seek or receive these identities under the guise of the discovery process. The identities of these providers were known to UHC in the absence of litigation. *Id.*

3.      In order to protect its members from outrageous out-of-network charges for commoditized services like routine laboratory tests, UHC's Network Physician Contracts obligate providers to "refer customers only to other network physicians and providers" except as otherwise provided. *Id.* at p. 3. Next Health's labs are out-of-network providers to which UHC's in-network physicians, including but not limited to Dr. Cannella, referred UHC's members. These referrals potentially violate the terms of UHC's Physician Network Contracts. *Id.* Indeed, UHC's Administrative Guide, expressly incorporated into the Physician Network

4

Contract, *see id.* at p. 8, sets forth a non-participating provider consent form protocol for specimens sent to out-of-network laboratories for testing, which includes rules for notifying members of potential higher out-of-pocket costs and requires physicians, like Dr. Cannella, to obtain a Member Advance Notice Form evidencing the member's consent to using out-of-network providers like the Next Health labs. *See* Administrative Guide at pp. 41-42 attached hereto as Exhibit 3, and the full voluminous document available under "Tools & Resources" at www.unitedhealthcareonline.com.

4.      UHC is entitled to audit its in-network providers' compliance with the aforementioned contractual obligations.  Indeed, under its Network Physician Contracts, UHC has contractual rights to request information necessary to conduct a reasonable audit of the provider's compliance with the Network Physician Contract, including the aforementioned provisions:

- Providers are contractually obligated to "cooperate with our reasonable requests to provide information that we need." *See, e.g.,* Exhibit 2 at p. 3;

- UHC "may request copies of medical records from you in connection with … reviewing your compliance with the terms and provisions of your agreement with us, and with any appropriate billing practice.  If we request medical records, you will provide copies of those records free of charge unless your participation agreement provides otherwise.  In addition, you must provide access to any medical, financial or administrative records related to the services you provide to our customers within 14 days of our request or sooner for cases involving alleged fraud and abuse… .  These records must be maintained and protected for confidentiality for 6 years… ." Administrative Guide at p. 61 attached hereto as Exhibit 4, and the full voluminous document  available under "Tools & Resources

5

at www.unitedhealthcareonline.com);

5.      Next Health itself has suggested that to the extent the medical necessity of the laboratory testing giving rise to the Complaint is under attack, such medical necessity is an issue that should be addressed to ordering physicians, like Dr. Cannella, not Next Health.  *See* Next Health's Motion to Dismiss (Doc. 18) at pp. 2-3 ("UHC's Benefit Claims rely to a large extent on alleged misrepresentations regarding the medical necessity of the laboratory testing services provided by the Next Health Labs.  Yet, Entity Defendants do not make representations to UHC regarding 'medical necessity.'  ***The physicians referring patient specimens for testing to the Next Health Labs exercise independent professional judgment in determining what testing services are appropriate and necessary***.") (emphasis added); *see also* Next Health Interrogatory No. 14 to Plaintiffs, attached hereto as Exhibit 5 ("Identify any and all allegations or claims for liability, whether for misrepresentation, fraud or other causes of action or theories of liability, made by UHC ***against any physician or other provider making referrals to one or more of Entity Defendants*** for the claims for laboratory testing services made the subject of UHC's Complaint relating to the medical necessity of the laboratory testing services at issue.") (emphasis added). The clear implication of these statements by Next Health is that the network physicians, and not Next Health, are the potential sources of billing impropriety.

6.      Given that the network physicians that received the contractual audit letters appear to have violated their contractual obligations (set forth in paragraphs 3, *supra*), UHC is well within its contractual rights to conduct an audit as to reasons behind such violations.  Given Next Health's suggestions of potential impropriety by these physicians and Next Health's request for any information related to such (set forth in paragraph 5, *supra*), UHC's audit is even more warranted.

7.      Before, during, and after the meet and confer session regarding this dispute, UHC informed Next Health that the basis of its ability to request documents via the letters in question was pursuant to the Network Physician Contracts. *See* Emails from Sinton to Rogers, attached hereto as Exhibit 6.  Nevertheless, Next Health intentionally omitted this critical fact from its Motion.

8.      UHC has been told by CMS that all four of Next Health's licensed laboratories are or will soon be prohibited from conducting any laboratory testing.  See Email from Pearson to Tobin, attached hereto as Exhibit 7.  Specifically, CMS officials told UHC that "United Tox and American Lab Group are being revoked due to proficiency testing referral.  US Tox is closed. … Medicus is still testing; did not voluntarily cease patient testing; we are working on suspending the lab." *Id.*  Laboratories must have a valid CLIA number from CMS in order to operate. 45 CFR Part 493 *et seq.*

9.      UHC is a covered entity under HIPAA.  45 CFR 160.103.  It is not a violation of either HIPAA or any physician-patient privilege for a Covered Entity network provider to provide a Covered Entity health plan with information about the health plan's members pursuant to a health care fraud and abuse detection or compliance.  45 CFR 164.506(c)

10.     Next Health has not presented any valid assignment that can be construed as giving Next Health any authority to act as a representative of UHC's in-network providers whom Next Health seeks to shield from compliance with their contractual obligations to respond to UHC's audit.

11.     Next Health has not presented any valid assignment that can be construed as giving Next Health any authority to act as "a representative of the patient entitled to assert the physician-patient privilege in this proceeding."  The cited portions of the form assignment attached by Next Health to its Motion, to the extent it even exists in signed version with regard to UHC Members,

merely confers on Next Health the right to request and obtain documents. (Doc. 37 at p. 14 of 20).

12.     While Next Health makes unsupported assertions of its right to assert privilege on behalf of patients, UHC provides evidence that at least some patients oppose Next Health acting on their behalf, and in fact view themselves as additional victims of Next Health's fraudulent scheme.  In fact, one woman, in describing Next Health as "corrupt," applauded UHC's lawsuit against Defendants, stating "[t]hey have made my life miserable … I am so happy you are suing these corrupt men!!!  Good luck and I will be praying that you win the lawsuit!!!!  I am so happy that they have finally been exposed." Ex. 1.

## III.    ARGUMENT

UHC does not dispute the Court's general and inherent authority to control discovery under Federal Rule of Civil Procedure 26(c).  As a preliminary matter, however, it is far from settled that the Rule 26(c) protective order requested by Next Health is even a valid procedural mechanism to attempt to restrict a party's non-litigation based communications pursuant to contracts that preexisted and are independent from the litigation.  *See e.g. Gottstein v. National Ass'n for the Self Employed*, 186 F.R.D. 654 (D. Kan. 1999) (**"**Defendants refer to Fed.R.Civ.P. 26(c) for their requested protective order. That rule, however, applies only to discovery. As the reply brief of defendants clearly indicates, plaintiffs had served no formal discovery to precipitate the motion. No one suggests, furthermore, that the disclosure requirements of Fed.R.Civ.P. 26(a)(1) prompted it. It thus appears that Rule 26(c) has no applicability to the motion as initially submitted.").

Assuming that Rule 26(c) does provide a proper procedural mechanism to Next Health, however, it still affords no relief here as no court has ever utilized it to restrict a party's contractual rights pertaining to business associates that pre-exist the advent of litigation.

**A.     The Court should not enter a Rule 26 protective order as UHC has pre-existing contractual rights with which Next Health cannot interfere simply because litigation is also pending.**

Next Health has not cited a single case in its Motion that is remotely related to the facts at hand. As set forth below, Next Health effectively seeks to use Rule 26 to limit the ability of a party to interact with its own pre-existing business contacts and contractual partners, and to limit a party's ability to exercise contractual rights that exist completely independent of the litigation, simply because litigation happens to be pending. Next Health, of course, has not framed its argument in this way. In fact, Next Health completely failed to meet its duty of candor to this Court when it omitted the existence of UHC's Network Physician Contracts with the letter recipients from its moving papers – this despite the fact that UHC repeatedly informed Next Health of its position that its pre-existing business relationship and contracts with these providers made these communications appropriate outside of discovery. *See* Ex. 5.

Next Health's Motion is completely devoid of any analysis of the cases it cites as authority for the entry of a protective order. Instead, Next Health relies on misleading or out-of-context parentheticals. This is not surprising because none of the cited cases suggest that the requested relief is appropriate under the instant facts. Given Next Health's lack of analysis of its own cited cases, a very brief discussion is necessary now so that UHC may illustrate the complete lack of applicability to the facts at hand.

Next Health first cites two Fifth Circuit cases, *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F. 3d 540 (5th Cir. 2016), and *Crosswhite v. Lexington Ins. Co.*, 321 Fed. Appx. 365 (5th Cir.

Tex. Apr. 1, 2009). The *Cazorla* case involved discovery propounded by one party litigant upon another. It is an unremarkable proposition that that a court can control discovery as propounded between the litigants to a proceeding. The *Crosswhite* case similarly involved a discovery dispute regarding discovery propounded between parties to the case. That is, plaintiff Crosswhite sought to compel defendant Lexington to produce its allegedly work product protected claims files. The granting of a protective order under such facts is once again unremarkable.

Having completely failed to locate any Fifth Circuit case law that resembles the facts at hand, Next Health scoured the country and found five district court cases that (at least) involve requests made by a litigant to a non-litigant third party. None of these cases, however, address the key fact at hand – that is, communications between a litigant and its contractual business partners. Accordingly, each of the cases is clearly factually distinguishable.

The *Azim* case involved use of the court's discovery process via subpoena on a third party with whom it had no prior relationship. *Azim v. Tortoise Capital Advisors,* 2015 U.S. Dist LEXIS 16402 (D. Kan. Jan. 14, 2015). In both *Westburg* and *Commodity*, the plaintiffs gained access to customer lists via the court's discovery process and then attempted to abuse the information gained in discovery by harassing *the other parties' customers*. The plaintiffs had no prior relationship with the third parties in either matter.[1] *Aktienge-Sellschaft v. Westburg,* 260 F. Supp. 636 (E.D. Pa. 1966); *Commodity Futures Trading Com. V. Rosenthal & Co.,* 74 F.R.D. 454 (N.D. Ill. 1977). Likewise, *Jeld- Wen* involved attempted communications with defendant's customers that plaintiff had no prior knowledge of, or relationship with, outside the discovery process. *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.,* 2006 U.S. Dist. LEXIS 97573 (S.D. Fla. July

---

[1] This, of course, is different from the present action before this Court, where UHC has sought to conduct audits of its own contractual partners.

11, 2006).   The final case cited by Next Health, *May Coating*, also involves an attempt by plaintiffs to communicate with customers of the defendant with whom the plaintiff had no pre-existing relationship.   *May Coating Techs., Inc. v. Ill. Tool Works,* 157 F.R.D. 55 (D. Minn. 1994).   The *May Coating* case has the additional distinguishing feature in that the plaintiff's communications to these third parties specifically attempted to manipulate their testimony by offering full releases in exchange for cooperation in the litigation.

None of these cases resembles the facts at hand.   UHC has sought to audit *its own contractual partners*.   Next Health has presented no case showing that any federal court has ever limited a party's exercise of contractual rights with its own contractual partners.   And UHC was unable to find any such case.   And for good reason, as it would make the Court a pawn in an overt attempt to tortiously interfere with a litigant's independent contractual rights.   Simply put, Next Health's Emergency Motion is completely and utterly frivolous.

As set forth above, UHC's Network Physician Contracts provide it with contractual rights to audit certain claims and administrative issues regarding its own in network physicians. These rights are necessary and integral to not only protect UHC against potential impropriety, but also to protect UHC's vulnerable members.   For example, network providers, such as letter recipient Dr. Cannella, are supposed to "refer customers only to other network physicians and providers" except as otherwise provided.   Ex. 2 at 3.   To the extent that Dr. Cannella was using a non-network laboratory, he was to do so in accordance with the non-participating provider consent form protocol.   Ex. 3 at pp. 41-42.   He was required to follow certain rules on notifying members of potential higher out-of-pocket costs.   *Id.*   He was required to obtain a Member Advance Notice Form after a member had consented to higher out-of-pocket costs by associated with Next

11

Health's tests so that UHC could have assurances that its members made informed choices and were not being taken advantage of by Next Health's kickback-driven profiteering. *Id.*

In assuring good care for its members, UHC clearly has sufficient reasons under its contract to conduct the audit set forth in its letters. Despite general contractual instructions otherwise, Dr. Cannella referred numerous UHC Members to out-of-network Next Health labs. According to Next Health, Dr. Cannella did this with no coercion on Next Health's part. According to Next Health, these referrals were completely based on Dr. Cannella's medical judgment that this testing was necessary. *See* Next Health's Motion to Dismiss (Doc. 18) at pp. 2-3 ("UHC's Benefit Claims rely to a large extent on alleged misrepresentations regarding the medical necessity of the laboratory testing services provided by the Next Health Labs. Yet, Entity Defendants do not make representations to UHC regarding 'medical necessity.' ***The physicians referring patient specimens for testing to the Next Health Labs exercise independent professional judgment in determining what testing services are appropriate and necessary***.") (emphasis added).

Next Health is speaking out of both sides of its mouth. On one side it says that it has nothing to do with influencing any physician in his determination that a referral was appropriate and necessary. In other words, the "it was them, not us" defense. On the other side Next Health states that UHC cannot independently investigate the physicians that Next Health has implicated except in the context of the very litigation that Next Health is trying to dismiss as frivolous.

The simple fact is that the referrals in question exposed vulnerable Texas patients to increased coinsurance obligations and out-of-pocket costs associated with the out-of-network claims. Next Health has insinuated that UHC's pre-existing contractual partners were the real parties behind the fraud. Is UHC simply to keep doing business with these doctors with no

12

opportunity to conduct an audit, thereby continuing to put its members in harm's way?  It bears repeating, members that were victimized by Next Health's scheme hope that UHC prevails in its efforts to stop Next Health's unlawful conduct.  *See* Ex. 1 ("[t]hey have made my life miserable … I am so happy you are suing these corrupt men!!!  Good luck and I will be praying that you win the lawsuit!!!!  I am so happy that they have finally been exposed.").  Furthermore, the Federal Government has independently concluded that Next Health is unfit to conduct laboratory testing.  *See* Ex. 7.  Yet, Next Health seeks to prevent UHC from conducting any investigation into the improper test orders of the very physicians that Next Health points to as the true root of the problem, claiming that UHC's audit letters will cause irreparable harm.

Since Next Health asserts that simple awareness of the lawsuit causes it irreparable harm, should UHC be prevented from deposing these doctors since that would make them "aware" of the allegations of the lawsuit?  Or calling them as trial witnesses?  The examples, while outwardly preposterous, are logical extensions of the very remedy that Next Health seeks.  The Motion must be denied.

**B.    The Court should not enter a Rule 26 protective order as Next Health's assertion of irreparable future business harm, upon information and belief, amounts to a fraud on the Court.**

To the extent that a court uses Rule 26(c) to limit non-litigation contact with third parties, the complaining party must demonstrate tangible business harm.  Next Health speciously asserts such business harm, as discussed below.  It has come to UHC's attention that Next Health's claim of potential business harm is not just specious.  It is a flat out fabrication.  Next Health cannot suffer the prospective business harm it alleges because it, essentially, has been banned from performing tests by applicable regulatory bodies.  Ex. 7.

Laboratories must have a valid CLIA number from the Centers for Medicare and

Medicaid Services (CMS) in order to perform non-waived laboratory testing on human specimens. 45 CFR Part 493 *et seq.* CMS has informed UHC that one of Next Health's labs has closed, and the other three are in the process of having their CLIA certifications suspended or revoked. See Ex. 7. Specifically, the CLIA certifications for American Laboratories Group and United Toxicology are being revoked. U.S. Toxicology is closed and not operating. CMS asked Medicus to voluntarily stop testing. Medicus did not comply with this request and CMS is now in the process of suspending its CLIA certification.

Given these events, the filing of Next Health's Motion and Affidavit swearing that contractual audit letters will cause it irreparable business harm is incredulous and merits an award of attorney's fees in favor of UHC.

**C.    The Court should not enter a Rule 26 protective order as Next Health cannot demonstrate any tangible business harm that UHC's exercise of contractual rights will cause.**

Even ignoring Next Health's struggles to maintain CLIA certifications, the Court should still deny Next Health's motion. Where a court is asked to use Rule 26(c) to limit non-litigation contact with third parties, the complaining party must demonstrate tangible business harm. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550-51 (6th Cir. 2004). Mere speculative claims of burden, prejudice, or damaging innuendo to business interests are insufficient. *Id.*

While a party may have a legitimate interest in preventing fishing expeditions to taint unrelated parties, a party has no ability to restrict access to contractual partners whose relevance was already clear. *Nemir*, 381 F.3d at 550-51. Moreover, simply reminding a third party of allegations of which it is likely already aware is not a basis for restricting access. *Id.* (specifically distinguishing the *Commodity* and *Westburg* cases cited by Next Health, and stating, "Conversely, the customers that Nemir sought to contact had already complained to Mitsubishi

14

of seatbelt malfunctions. The relevance of these customers was already clear, and interviews by plaintiff's counsel would likely have served as little more than a reminder of the seatbelt problems that the consumers themselves had perceived and articulated. Mitsubishi's concerns, then, are speculative, and mere speculation is insufficient to warrant such stringent limits on pretrial investigation.").

Next Health's attempt to restrict UHC's access here is even more flawed than Mitsubishi's attempt in *Nemir*.  These are not fishing expeditions made on customers only previously known to Next Health.  Indeed, UHC's relationship with the physicians at issue preceded Next Health's relationship with the physicians – after all, it was the physician's relationship with UHC (i.e., their in-network status) that made them appealing clients to Next Health's kickback-driven business model that depended on identifying commercially insured patients.  Moreover, Next Health itself has essentially made admissions *in judicio* via publicly filed documents that the very physicians that received these letters are "relevant."  *See* Next Health's Motion to Dismiss (Doc. 18) at pp. 2-3 The physicians that UHC has contacted via these contractual audit letters are the very physicians that Next Health has insisted that UHC look to as culprits.

Next Health has failed to demonstrate any non-speculative *prospective* harm that will occur because of UHC's audit letters.  It has only identified *retrospective* harm that it alleges has already occurred.  Next Health indicated to the Court that the publicity surrounding the instant lawsuit is essentially putting them out of business and has already caused dramatic business harm.  *See* Next Health Emergency MPO at p. 7 of 20.  Next Health itself states that its CEO and CFO have already resigned their positions because of the allegations in the lawsuit.  Next Health's affiant may or may not have considered that perhaps the CEO and CFO resigned

15

because CMS stripped the labs of their licenses, *See* Ex. 7, or because patients are revolting against Next Health's fraudulent scheme, *See* Exhibit 1.  This is unclear.  What is clear, however, is that Next Health admits that the significant business harm that Next Health seeks to protect against has already occurred – long before UHC started its contractual audits of its in-network physicians.  In fact, Next Health fails to submit any proof to the Court that Dr. Cannella or any other physician is currently ordering tests from Next Health that will stop if UHC continues its audit.  Next Health simply presents the Court with conclusory and disingenuous speculation that simply mentioning the publicly available allegations of the lawsuit to UHC's own business partners is going to cause Next Health irreparable business damage *going forward*.

Such speculation is meaningless in the context of Rule 26 relief.  *See Gottstein,* 186 F.R.D. at 659 ("Defendants also suggest that they have a legitimate business interest in preventing unrestricted contact with their customers.... They present nothing but supposition and conjecture, however, to support finding future communications of counsel for plaintiffs will harm their reputation or profits.").  The Motion must be denied.

**D.    The Court should not enter a Rule 26 protective order as UHC's letters do not request Protected Health Information, and even to the extent they do, UHC is a Covered Entity that is authorized to receive PHI from another Covered Entity pursuant to HIPAA.**

UHC is a Covered Entity as defined by HIPAA.  45 CFR 160.103 ("Covered Entity Means: 1) A health plan.").  UHC's network physicians are Covered Entities as defined by HIPAA.  *Id.* ("Covered Entity Means: 3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter.").  A health care provider can disclose protected health information of a health plan's members to the health plan as part of any health care fraud and abuse detection or compliance.  45 CFR 164.506(c)(4):

**(c)(4)** A covered entity may disclose protected health information to another covered entity for health care operations activities of the entity that receives the information, if each entity either has or had a relationship with the individual who is the subject of the protected health information being requested, the protected health information pertains to such relationship, and the disclosure is:

**(ii)** For the purpose of health care fraud and abuse detection or compliance.

This is a very basic analysis. UHC's receipt of PHI via the contractual audit requests is unambiguously allowed under HIPAA. If Next Health had performed this simple analysis, it could have eliminated half of the argument in its brief. Either Next Health did not perform this analysis, or it did and made this frivolous argument to the Court anyway.

The puzzling question is why, given that the letters do not even request PHI? Take for example the third numbered request in the audit letters to which Next Health objects (Doc. 37-2):

3. Produce copies of all contracts or agreements between **You** and any entity or individual, regarding laboratory testing services performed or billed for by **Next Health**, from January 1, 2014 through today's date.

Next Health actually wants the Court to believe that this is requesting PHI of patients. Each of the numbered requests that Next Health objects to would require the same strained linguistic interpretation, and absence of common sense by the doctor, to ever lead to the disclosure of PHI. *Which would be allowed under HIPAA anyway*. 45 CFR 164.506(c)(4).

Next Health also argues that these letters would lead a physician to disclose PHI from non-UHC Members. That type of disclosure would in fact not be permissible under HIPAA. UHC obviously has no right to PHI from patients that are not its members, and it has not requested such information. The Network Physician Contracts specifically address the right of UHC only to request medical records regarding its own Members. Ex. 4 at 61 ("In addition, you must provide access to any medical, financial or administrative records related to the services

17

you provide **to our customers** within 14 days of our request or sooner for cases involving alleged fraud and abuse.") (emphasis added).

Does Next Health really believe that physician's offices are grabbing PHI off of shelves and giving it to people that have absolutely no right to receive it and have not requested it? Of course not. Physician's offices make these calls each and every day without the help of Next Health. Nevertheless, Next Health makes the argument about PHI in a transparent attempt to bolster its frivolous arguments regarding "inflammatory language" and "irreparable business harm," and because it is likely very worried about the damaging nature of the documents that the network physicians are going to provide to UHC in responding to the audit letters. Next Health's motives and worries are not sufficient bases to support an "Emergency Motion for a Protective Order." Accordingly, the Motion must be denied.

## IV.    CONCLUSION

For all of the reasons set forth above, UHC has shown that there is no merit or substantial justification for the relief requested by Next Health. The Motion Must be DENIED. UHC hereby requests all relief afforded to it pursuant to Federal Rule of Civil Procedure 37(a)(5).

Respectfully submitted this 18th day of August 2017.

**WEINBERG, WHEELER,  HUDGINS GUNN & DIAL, LLC**

_/s/ Stephen W. Mooney_

Stephen W. Mooney
Texas Bar No.: 14319100
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Telephone: 404-876-2700
Facsimile: 404-875-9433
Email: smooney@wwhgd.com

_Counsel for Plaintiffs_

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served electronically on all parties who have made an appearance in this action or their counsel of record, pursuant to the Federal Rules of Civil Procedure, on this 18th day of August, 2017.

Ernest Martin, Jr.
HAYNES AND BOONE, LLP
2323 Victory Ave., Suite 700
214-651-5000
ernest.martin@haynesboone.com
*Counsel for Entity Defendants*


I HEREBY CERTIFY a copy of the foregoing has been sent via regular U.S. Mail to the following:

Erik Bugen                           Kirk Zajac
c/o Joe Turner, Esq.                 15825 Garrison Cl
Joseph A. Turner, P.C.               Austin, TX 78717-3053
1504 West Avenue
Austin, TX 78701


Dated: August 18, 2017


                                     */s/ Stephen W. Mooney*
                                     Stephen W. Mooney