# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

UNITEDHEALTHCARE SERVICES, INC.
AND UNITEDHEALTHCARE INSURANCE
COMPANY,

Plaintiffs,

vs.

NEXT HEALTH LLC, AMERICAN
LABORATORIES GROUP LLC, MEDICUS
LABORATORIES, UNITED TOXICOLOGY,
U.S. TOXICOLOGY LLC, ERIC BUGEN,
AND KIRK ZAJAC,

Defendants;

_____

NEXT HEALTH LLC, AMERICAN
LABORATORIES GROUP LLC, MEDICUS
LABORATORIES LLC, UNITED
TOXICOLOGY LLC, AND U.S.
TOXICOLOGY LLC,

Counterclaim-Plaintiffs,

vs.

UNITEDHEALTHCARE SERVICES, INC.,
UNITED HEALTHCARE INSURANCE
COMPANY, AND UNITEDHEALTH
GROUP, INC.,

Counterclaim-Defendants.                    /
_____

No.: 3:17-CV-0243-M

## COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS THE COUNTERCLAIMS AND/OR STRIKE PORTIONS OF THE COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ALLEGATIONS. ................................................................................................................... 2

ARGUMENTS AND POINTS OF AUTHORITY .......................................................... 4

I.   Pursuant to Rule 12(b)(1) and 12(b)(6), Next Health's Counterclaims should be dismissed... 4

    A.   Next Health lacks standing to assert non-benefits claims and thus Counts Two and Four
        should be dismissed pursuant to Rule 12(b)(1)…................................................................4

        1.   Standard ............................................................................................................ 5
        2.   Next Health does not allege that the assignment language quoted in the Counterclaims
             is representative of the assignments it holds for each of the claims ............................ 5
        3.   Next Health's other "varied" forms of assignments do not constitute express and
             knowing assignments of non-benefits claims ............................................................. 7

    B.   All Counts fail to state a claim upon which relief can be granted and should be dismissed
        under Rule 12(b)(6)........................................................ ...…......………………………....8

        1.   Count One should be dismissed because it does not allege sufficient facts about plan
             terms to make UHC's purported breach of such terms plausible...…………………11
        2.   Count Two should be dismissed because it is just a recast claim for
             unpaid benefits.....................………………………………….……………………...12
        3.   Count Four should be dismissed because Next Health does not plausibly allege that it
             requested plan documents from UHC.........................................................……13

II.  Pursuant to Rule 12(f), immaterial, impertinent, and scandalous allegations should be struck
    from Next Health's Counterclaims..................................................................………….14

    A.   The Rule 12(f) standard arms the Court with the authority to strike extraneous and
        inappropriate allegations on the grounds that they are immaterial, impertinent or
        scandalous...............………………………………………………………………15

    B.   The elements of the Counts in Next Health's Counterclaim illustrate that the extraneous
        allegations have no possible relevance and are impertinent, immaterial, or
        scandalous.........................…………………………………………………………17

        1.   Disclosure of confidential settlement negotiations ...........…………………………20
        2.   Allegations of bad character and prior bad acts...........…………………….......23

CONCLUSION........................................................................................ ..25

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.,*
  No. 3:16-CV-2355-G, 2017 WL 4868180 (N.D. Tex. Oct. 27, 2017) ......................... 12

*Agnew v. Aydin Corp.,*
  No. 88–3436, 1988 WL 92872 (E.D. Pa. Sept. 6, 1988) ................................................ 22

*Alvarado-Morales v. Digital Equip. Corp.,*
  843 F.2d 613, 617 (1st Cir. 1988) ................................................................................ 16

*Anderson v. Davis Poly & Wardell LLP,*
  850 F. Supp. 29 392, 417 (S.D.N.Y. 2012) .................................................................. 24

*Ashcroft v. Iqbal,*
  56 U.S. 662 (2009) ........................................................................................................ 14

*Berry v. Lee,*
  428 F. Supp. 2d 546 (N.D. Tex. 2006) ......................................................................... 22

*Boldt v. Dow Chem. Co. Voluntary Grp. Acc. Ins. Plan,*
  No. 6:06-CV-25, 2007 WL 2329873 (S.D. Tex. Aug. 15, 2007) .................................. 14

*Brown v. Aetna Life Ins. Co.,*
  975 F. Supp. 2d 610 (W.D. Tex. 2013) ........................................................................ 13

*Bureerong v. Uvawas,*
  922 F. Supp. 1450, 1479 (C.D. Cal. 1996) ................................................................... 23

*Causey v. Sewell Cadillac-Chevrolet, Inc.,*
  394 F.3d 285 (5th Cir. 2004) ........................................................................................ 11

*Cigna Corp. v. Amara,*
  563 U.S. 421 (2011) ...................................................................................................... 12

*Cowell v. Utopia Home Care, Inc.,*
  144 F. Supp. 3d 398 (E.D. N.Y. 2015) ......................................................................... 16

*Crowder v. Village of Kaufman, Ltd.,*
  No. 3:09–cv–2181–M, 2010 WL 2710601 (N.D. Tex. July 7, 2010) ............................. 5

*Den Norske Stats Oljeselskap As v. HeereMac Vof,*
  241 F.3d 420 (5th Cir. 2001) .......................................................................................... 5

*Doan v. Singh,*
  No. 1:13–cv–00531–LJO–SMS, 2013 WL 3166338 (E.D. Cal. June 20, 2013) .......... 24

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.,*
  No. CV H-11-2745, 2017 WL 1710567 (S.D. Tex. May 3, 2017) ............................ 6, 7

*Erby v. Webster University,*
  No. 3:13-518-JFA-SVH, 2013 WL 4586018 (D.S.C. Aug. 28, 2013) .......................... 16

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.,*
  No. 3:12-CV-1607-O, 2014 WL 10212850 (N.D. Tex. July 21, 2014) ................... 9, 10

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.,*
  995 F. Supp. 2d 587 (N.D. Tex. 2014) ..................................................................... 9, 10

*Kelly v. LL Cool J.,*
  145 F.R.D. 32 (S.D.N.Y. 1992) .................................................................................... 22

*Foster v. WNYC-TV*,
   No. 88-Civ-4584, 1989 U.S. Dist. LEXIS 13724 (S.D. N.Y. Nov. 17, 1989) .............. 22
*Marceaux v. Lafayette Consol. Gov't*,
   No. 6:12–cv–01532, 2012 WL 5197667  at *2 (W.D. La. Oct. 18, 2012) .................... 16
*Oaks v. Fairhope*,
   515 F.Supp. 1004 (S.D. Ala 1981) ................................................................................ 16
*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
   771 F. Supp. 2d 680 (S.D. Tex. 2011) .......................................................................... 22
*Philadelphia.'s Church of Our Savior v. Concord Twp.*,
   No. 03-1766, 2004 WL 1824356 (E.D. Pa. July 27, 2004) ........................................... 22
*Rhorer v. Raytheon Eng'rs and Constructors, Inc.*,
   181 F.3d 634 (5th Cir. 1999) ....................................................................................... 12
*Rodriguez v. Tex. Com'n of Arts*,
   992 F. Supp. 876 (N.D. Tex. 1998) ............................................................................... 5
*Sadler v. Benson Motors Corp.*,
   No. CIV.A. 97–1083, 1997 WL 266735 (E.D. La. May 15, 1997) ............................... 16
*Schultz v. Braga*,
   290 F. Supp. 2d 637 (D. Md. 2003) .............................................................................. 24
*Scott v. Township of Bristol*,
   No. 90–1412, 1991 WL 40354 (E.D. Pa. Mar. 20, 1991) ............................................. 22
*Sefton v. Jew*,
   204 F.R.D. 104 (W.D. Tex. 2000) ................................................................................. 16
*Sirazi v. Gen. Mediterranean Holding, SA*,
   No. 12 C 0653, 2013 WL 812271 (N.D. Ill. Mar. 5, 2013) ........................................... 24
*Talbot v. Robert Matthews Dist. Co.*,
   961 F.2d 654 (7th Cir. 1992) ........................................................................................ 16
*Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*,
   No. 3:15-CV-02096-M, 2016 WL 3541828 (N.D. Tex. June 28, 2016) ......... 5, 8, 10, 12
*U.S. rel. Alsaker v. CentraCare Health Sys., Inc.*,
   No. Civ. 99-106, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) ........................... 22
*U.S. Transmission Systems v. Americus Ctr.*,
   No. 85–7044, 1986 WL 13838, at *2 (E.D. Pa. Dec. 3, 1986) ..................................... 22
*United States v. Coney*,
   689 F.3d 365 (5th Cir. 2012) ....................................................................................... 16
*United States v. McGlothin*,
   705 F.3d 1254 (10th Cir. 2013) ................................................................................... 25

Statutes/Rules
29 U.S.C. § 1024 ....................................................................................................................... 13
29 U.S.C. § 1132 ....................................................................................... 3, 9, 12, 13, 14
29 U.S.C. § 1133 ............................................................................................................... 3, 12
Fed. R. Evid. 404 ...................................................................................................................... 25
Fed. R. Evid. 408 ............................................................................................................... 22, 23
Fed. R. Civ. P. 12 .................................................... 1, 2, 4,5, 7, 8, 9,10, 14, 15, 16, 20, 22

**OTHER AUTHORITIES**

*Black's Law Dictionary* PREJUDICE (10th ed. 2014) ..................................................... 25

61A Am. Jur. 2d Pleading § 471 ..................................................................................... 16

Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), 12(e), and 12(f), Plaintiffs/Counterclaim-Defendants UnitedHealthcare Insurance Company and UnitedHealthcare Services, Inc. and Counterclaim-Defendant UnitedHealth Group, Inc. (together, "UHC") file this Motion To Dismiss the Counterclaims and/or Strike Portions of the Counterclaims and Supporting Memorandum of Law.

## INTRODUCTION

On November 15, 2017, Next Health, American Laboratories Group, Medicus Laboratories, United Toxicology and U.S. Toxicology filed "Entity Defendants' Answer to Plaintiffs' Original Complaint and Counterclaims." [ECF. No. 72]. This Motion seeks to dismiss the Counterclaims alleged in that pleading and/or strike portions of the pleading.

Next Health is attempting to use ERISA-based causes of action that it patterned from a different, unrelated, case brought against UHC as a vehicle to advance its false, inflammatory, and, most importantly, irrelevant narrative of UHC as a "corporate bully" that is determined to put out-of-network providers, like Next Health, out of business. Because the ERISA-based causes of action are patterned after an unrelated case, Next Health struggles to satisfy the basic plausibility pleading standard. And by forcing its irrelevant argument that UHC has acted to intentionally put Next Health out of business, it has tacitly admitted that its business is based on defrauding insurance companies. An out-of-network provider would only be forced out of business by an insurance company's denial of claims for that provider's services if the provider never intended to hold patients financially responsible for its services. This concept is a central point in UHC's misrepresentation-based claims against Next Health.

Focusing on the legal merits of the Counterclaims, there are several fundamental problems. UHC moves to dismiss all four Counts under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. Alternatively, UHC moves to dismiss Counts Two and Four,

1

under Rule 12(b)(1), because Next Health lacks standing to assert those Counts. If any Counts remain, UHC moves under Rule 12(e) for a more definite statement supporting those Counts, and moves under Rule 12(f) to strike numerous paragraphs from the Counterclaims that contain impertinent, immaterial, or scandalous allegations.

## ALLEGATIONS

The Counterclaims allege four Counts against UHC and UnitedHealth Group, Inc.[1] [ECF No. 72]. All four Counts in the Counterclaims are based on the Employee Retirement Income Security Act of 1974 ("ERISA"), and are asserted via purported assignments from UHC's members. Next Health, LLC asserts all four Counts, while the "Next Health Labs" (American Laboratories Group, Medicus Laboratories, United Toxicology, U.S. Toxicology) only assert Count Two.[2] [*See* ECF No. 72, at ¶¶ 420, 427, 435 and 438, 444].

In Count One, Next Health alleges that "Next Health has standing to pursue its claims under ERISA as an assignee of the UHC Beneficiaries' claims under the Plans," and that UHC has "refused to pay the usual, customary, and/or reasonable charges, or the prevailing fees or

---

[1] UnitedHealth Group, Inc. is not a Plaintiff in this action; the summons Entity Defendants served on UnitedHealth Group had Entity Defendants' prior standalone counterclaim [ECF No. 57] attached to it. Entity Defendants acknowledge that is not an operative pleading. Because UnitedHealth Group has not been served, it is not yet a party and it need not file a responsive pleading at this time. However, out of an abundance of caution, it joins this Motion to Dismiss.

[2] It is unclear whether this is intentional or accidental. The Counterclaims specifically define the group of American Laboratory Group, Medicus Laboratories, United Toxicology, and U.S. Toxicology as "Next Health Labs." [ECF No. 72, at ¶ 359]. That defined term is used throughout the Counterclaims, but Counts One, Three, and Four allege that Next Health, not "Next Health Labs" or some other defined term that is inclusive of all five entities, is asserting the causes of action and entitled to the relief sought therein. In Count Two, however, "Counterclaim-Plaintiffs" are alleged to be entitled to relief. To avoid as much confusion as possible, and out of an abundance of caution, UHC will refer to the five Entity Defendants, collectively, as Next Health. This is not intended as a waiver, or an acknowledgment that American Laboratories Group, Medicus Laboratories, United Toxicology, or U.S. Toxicology have alleged causes of action in Counts One, Three, and Four. However, to the extent they have, the arguments herein apply to them with equal force.

recognized charges for medically necessary procedures and services performed by Counterclaim-Plaintiffs," and thus "[a]s a result of UHC's refusal to render payment on these valid claims, Next Health is entitled to recover the unpaid and underpaid benefits from [UHC] pursuant to 29 U.S.C. §1132(a)(1)(B)." [*Id.* at ¶¶ 419-424].

In Count Two, Next Health alleges that UHC breached its fiduciary duties to its beneficiaries and that "Counterclaim-Plaintiffs" are entitled to relief for those breaches, under ERISA § 503(a)(3). [*Id.* at ¶ 433].

In Count Three, Next Health alleges that, "[a]s an assignee of the UHC Beneficiaries' claims, Next Health receives protections under ERISA providing for, among others, (i) a 'full and fair review' of all claims denied by [UHC]," and that "Next Health has been harmed by UHC's failures to: (i) provide a 'full and fair review' of appeals submitted under ERISA § 503, 29 U.S.C. § 1133; (ii) disclose information relevant to appeals; and (iii) comply with applicable claims procedure regulations." [*Id.* at ¶ 440]. Thus, "Next Health seeks declaratory and injunctive relief for [UHC's] failures to provide a full and fair review," including a "full and fair review of all claims submitted to [UHC] since January 1, 2011, and those to be submitted in the future, . . ." [*Id.* at ¶¶ 438, 440].

Finally, in Count Four, Next Health alleges that "Next Health, as assignee is entitled to bring a civil action pursuant to ERISA § 502 (a)(1)(A) for the relief identified in ERISA § 502 (c)(1)," which is a statutory penalty assessed per day, from the date of any failure or refusal to provide requested information. [*Id.* at ¶¶ 443, 444].

The crux of the Counterclaims is that UHC allegedly failed to follow its plans' terms in issuing reimbursements, but Next Health only identifies one plan term that UHC purportedly breached, alleging, on information and belief, that the same term is in all relevant plans. [*Id.* at ¶

3

422]. While Next Health includes Exhibits that list many claims, it never identifies what claims match which allegations. Next Health alleges that it has necessary assignments from UHC's members to bring all of its claims, [*Id.* at ¶ 385], but acknowledges that its assignment language varied over time. [*Id.*]. Next Health includes one example of an assignment, [*Id.*], but never alleges that the assignment language in that example was the language used in any specific claims at issue or used by any particular patients to assign Next Health any of their ERISA-based rights and remedies.

Despite lacking many fundamental allegations, Next Health's Counterclaim still spans more than 40 pages because it is filled with immaterial, impertinent, and scandalous allegations. The majority of the allegations in the Counterclaim are only included so as to smear or prejudice UHC, or to serve as the basis for wasteful, tangential discovery. Specifically, Next Health's allegations include details of confidential settlement negotiations, undertaken pursuant to a confidentiality agreement at Next Health's lawyers' insistence. Next Health also makes numerous allegations regarding purported prior "bad acts," which would never be admissible to prove any part of Next Health's causes of action.

## ARGUMENTS AND POINTS OF AUTHORITY

I.  PURSUANT TO RULE 12(b)(1) AND 12(b)(6), NEXT HEALTH'S COUNTERCLAIMS SHOULD BE DISMISSED.

A.  Next Health lacks standing to assert non-benefits claims and thus Counts Two and Four should be dismissed pursuant to Rule 12(b)(1).

Next Health purports to assert benefits claims *and non-benefits claims* under ERISA, standing in the shoes of plan members. [ECF No. 72, at ¶¶ 385, 420, 427, 444.] Specifically, Next Health asserts two non-benefits claims – a breach of fiduciary duty claim (Count Two) and a claim for penalties (Count Four). UHC moves to dismiss these non-benefits claims under Rule 12(b)(1).

4

1.  Standard

In considering a Rule 12(b)(1) motion, a "court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed fact evidence in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.,* No. 3:15-CV-02096-M, 2016 WL 3541828, at *3 (N.D. Tex. June 28, 2016) (Lynn, C.J.) ("*Texas General*") (quoting *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)). "A factual attack challenges the existence of subject matter jurisdiction by looking beyond the pleadings. In reviewing a factual attack, the court may consider matters outside the pleadings, such as testimony and affidavits." *Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 879 (N.D. Tex. 1998). "When a defendant makes a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits and testimony, the plaintiff must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction." *Texas General*, 2016 WL 3541828, at *3 (citing *Crowder v. Village of Kaufman, Ltd.*, No. 3:09–cv–2181–M, 2010 WL 2710601, at *1 (N.D. Tex. July 7, 2010) (Lynn, J.)).

2.  <u>Next Health does not allege that the assignment language quoted in the Counterclaims is representative of the assignments it holds for each of the claims</u>**.**

A general allegation of assignment of benefits is insufficient to convey standing to a provider to assert non-benefits claims. *Texas General*, 2016 WL 3541828, at *9. Rather, to assert non-benefits claims, a provider must demonstrate that it also obtained an "express and knowing assignment" of such claims. *See id.,* at *8. Where an assignment fails to reference breach of fiduciary duty claims or other non-benefits claims, it does not convey standing for a provider to pursue such claims. *Id.* at *9 ("The Court concludes that the assignments to TGH are ineffective to assign any right to pursue non-benefits ERISA claims, including claims for breach of fiduciary duty."). Accordingly, the question before the Court is whether Next Health possesses valid

5

AOBs that *also* reference "ERISA fiduciary duty claims or other non-benefits claims" for all of the underlying 68,954 claims for benefits that Next Health purports to bring in the Counterclaim, because pleading a mere assignment of *benefits* alone is insufficient. *See id.*, at *8-9.

Next Health alleges that the assignments gathered by "Next Health Labs . . . have varied over time." [ECF No. 72, at ¶ 385]. Although Next Health sets forth the terms of an "example" assignment in the Counterclaim (which refers to breach of fiduciary duty), Next Health <u>does not</u> allege that it received this form of assignment from each patient (it does not even allege that it received this form of assignment from any particular patient or link it to any particular claim). Nor does Next Health allege that the "example" assignment is representative of its other assignment language.  Finally, Next Health fails to set forth the terms or language of the other assignments of benefits forms it used.  There are thus no factual allegations plausibly showing that Next Health possesses an assignment that refers to ERISA "breach of fiduciary duty claims or other non-benefits claims" in connection with the underlying 68,954 claims for benefits.

Addressing deficiencies in standing allegations earlier this year, Judge Rosenthal cautioned another medical services provider that it must (among other things) identify the patients from whom it obtained assignments:

> In the amended complaint that Electrostim may seek leave to file, <u>it must make plausible allegations about who assigned rights under what insurance policy and identify what insurance policy terms Blue Cross breached and how</u>.  No doubt this is a daunting task, given the number of claims in issue. Electrostim need not set out every assignment and breached contract provision in separate breach-of-contract pleadings. <u>But it must identify the persons from whom it received assignments</u>.  It also must provide a sufficient number of exemplar policies and policy terms it claims Blue Cross breached, and facts explaining why the policies are representative.

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp*., No. CV H-11-2745, 2017 WL 1710567, at *8 (S.D. Tex. May 3, 2017) (emphasis added).

Next Health has failed to make this showing. The Court should therefore dismiss Counts Two and Four under Rule 12(b)(1). Alternatively, under 12(e), Next Health should be ordered to specify (i) from which patients and for which claims each Defendant/Counterclaim-Plaintiff holds an assignment with the "example" language recited in the Counterclaim; and (ii) all other form assignments of benefits Next Health purports to rely upon to assert non-benefits claims and to which claims each of those other assignments apply.

> 3. <u>Next Health's other "varied" forms of assignments do not constitute express and knowing assignments of non-benefits claims</u>.

In addition, the facts before the Court confirm what Next Health's pleading deficiencies imply. UHC requested medical records from Next Health's four licensed subsidiaries (the "Next Health Labs") relating to a random sample of claims for laboratory services. United Toxicology and Medicus Laboratories responded with some medical records, including requisition forms, which contain the assignments that Next Health relies upon for standing. App. at 1-48. The assignment language varies, but only a very small percentage of the assignments to which UHC has access resemble the example Next Health attached to its Counterclaim. App. at 9-24, 31-48. Most of the forms are nearly identical, stating:

> I authorize my insurance benefits directly to a US Health Group affiliate lab for the services I receive…I am also aware that in some circumstances my insurance will send the payment directly to me for the services provided.  Under law, I agree to endorse the insurance check and forward it to the Lab & Clinic within 30 days of receipt.

*See, e.g.,* App. at 9.  This Court has previously held that such benefit assignments are insufficient to convey non-benefits claims.[3] *Texas General,* 2016 WL 3541828, at *9 ("The Court concludes

---

[3] Next Health used still other variations of assignment as well, including some that add the following: "rights, claims or causes of action [the member] may have to request and obtain documents from any Health Plan." *See, e.g.,* App. at 42. But again, they do not refer to ERISA breach of fiduciary duty or ERISA penalty claims. They do not therefore provide Next Health

that the assignments to TGH are ineffective to assign any right to pursue non-benefits ERISA claims, including claims for breach of fiduciary duty."). Accordingly, Next Health cannot rest on its (at best) vague allegations about the form and scope of its "varied" assignments; rather, it must prove by a preponderance of evidence that it obtained an "express and knowing" assignment of Non-Benefits Claims from each patient in whose shoes it purports to assert such claims. *See Texas General,* 2016 WL 3541828, at *3. Counts Two and Four should therefore be dismissed under Rule 12(b)(1). At a minimum, Next Health should be ordered under Rule 12(e) to specify which claims fall under each of the three variations of assignments now before the Court.

**B.      All Counts fail to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).**

As an initial matter, Next Health alleges that the exhibits to the Counterclaims include group and plan numbers. [ECF No. 72, ¶ 391]. But they do not. This defect permeates all of Next Health's Counts (One through Four) since they all allegedly arise from claims for services to unidentified members of unspecified plans. The Counterclaims should therefore be dismissed entirely or Next Health should be required to make a more definite statement under Rule 12(e).

In any event, Count One should be dismissed because it does not allege sufficient facts about plan terms to make UHC's purported breach of such terms plausible, Count Two should be dismissed because it is just a recast claim for unpaid benefits, and Count Four should be dismissed because Next Health does not plausibly allege that it requested plan documents from UHC.

---

with standing to assert non-benefits claims. *See Texas General*, 2016 WL 3541828, at *9 (concluding the assignment was insufficient to convey breach of fiduciary duty and other non-benefits claims because "[t]he assignment does not reference any ERISA breach of fiduciary duty claims or other non-benefits ERISA claims.").

1.   Count One should be dismissed because it does not allege sufficient facts about plan terms to make UHC's purported breach of such terms plausible.

A claim for benefits under § 1132(a)(1)(B), like Count One, permits a plan member to bring suit "to recover benefits due…under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "The phrase 'terms of the plan' is '[w]orthy of emphasis' because parties derive rights to benefits from the plan, and Section 502(a) only authorizes enforcement of the 'terms of the plan.'" *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 600-01 (N.D. Tex. 2014) ("Innova I") (internal citations omitted). In *Innova II*, Judge O'Connor "emphasized the importance of the phrase 'terms of the plan'" with respect to stating an ERISA claim, requiring a plaintiff to plead "sufficient facts about the plan's provisions to make a claim for benefits under § 1132(a)(1)(b) plausible and to give the defendant sufficient notice as to which provisions it allegedly breached." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12-CV-1607-O, 2014 WL 10212850, at *4 (N.D. Tex. July 21, 2014) ("*Innova II*"). Next Health has failed to allege facts about the terms of the plans at issue to make its claims based on violating such terms plausible.

More importantly, Next Health does not plausibly identify the plan terms allegedly breached with respect to these claims. Next Health alleges that "[i]n practically every one of the 68,954 claims, however, UHC paid something less than Next Health's usual, customary, and reasonable rate for testing services provided." [ECF No. 72, ¶ 388]. But Next Health does not identify **a single plan** that requires payment of all of Next Health's charges in the manner alleged.

Judge O'Connor's critique of the complaint in *Innova I* is instructive here. Innova attached a Claim Schedule listing its "usual and customary charges" and alleged that the defendant failed "to make payments of benefits to [Plaintiffs] … as required under the terms of

9

the [ERISA-governed] plans." *Innova I,* 995 F. Supp. 2d at 601-02. The court held that the hospital failed to adequately identify the terms of the plans that had been breached and dismissed the claim. The plaintiffs filed an amended complaint wherein they (a) asserted that it would not be "practical to quote…the individual provisions of every plan at issue," and (b) relied on "representative examples" that, "on information and belief," were the same across all plans and required the "Defendants to pay all claims at R&C or UCR [reasonable and customary or usual, customary, and reasonable] amounts." *Innova II,* 2014 WL 10212850, at *5. The court dismissed the claim as speculative, focusing on the hospital's attempt to assert that the same R&C and UCR plan terms were used in all of the plans governing the claims for benefits at issue. *Id.* at *5.

Here, Next Health asserts, "on information and belief," that all of the plans that govern over 68,000 claims for benefits require reimbursement at "usual, customary, and reasonable rates." [ECF No. 72, at ¶ 422]. This allegation is unsupported by the contents of even a single allegedly representative plan. It is even more speculative than the allegations in *Innova I* and *II* and is insufficient to state a claim that would potentially open the door to judicial review of administrative records for over 68,000 claim decisions under hundreds of different plans with varied terms.[4]

Take for example UHC's own health plan, which provides:

> *Higher Expenses Using Non-Network Providers*

---

[4] Nor does this Court's experience with such allegations lend any plausibility to the allegations. In *Texas General*, the hospital did not attempt to hide behind allegations "on information and belief." Rather, it alleged that all of the underlying plans "require reimbursement of medical expenses incurred by United [s]ubscribers at usual, customary, and reasonable rates." *Texas General,* 2016 WL 3541828, at *4. The hospital's list of claims, however, included hundreds of claims that were under plans that had no such language. Unsurprisingly, the hospital ultimately stipulated to dismissal of all claims that were not processed under plan provisions limiting benefits based on a "reasonable and customary" methodology. *See Texas General*, No. 3:15-cv-2096-M, ECF No. 59, at 4 (N.D. Tex. Sept. 19, 2016).

> In Non-Emergency situations, you will pay much more if you visit a Non-Network Provider because your Deductibles and Coinsurance percentages will be higher.  In addition, the Medical Plan's Coinsurance will be computed based on the Non-Network Eligible Expense (NEE) instead of the generally lower Scheduled Fee.  This will result in much lower payments by the Medical Plan.  Finally, the Provider will bill you for the difference between his or her Billed Charge and the NEE.  You are responsible for paying this difference, commonly known as Balance Billing. For Network Select, there is no coverage for care received by a Non-Network Provider for Non-Emergency Situations.[5]

App. at 57. The UHC Plan further explains that, absent a negotiated rate, the NEE is one of the following: (i) "110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market;" (ii) for certain non-pharmaceutical products where CMS does not publish a rate, a "gap methodology" that uses "the relative value scale, which is usually based on the difficulty, time, work, risk, and resources of the service;" or (iii) when neither a CMS rate nor a gap methodology is available, "50% of the provider's billed charges." App. at 58-59. In short, the UHC Plan determines benefits using Medicare rates, a gap methodology for some claims based on CMS's relative value scale, or 50% of a provider's billed charge.  There is no term setting benefits based on an R&C or UCR determination. Next Health's allegations—solely on information and belief—that all plans require payment of a provider's purported "usual, customary, and reasonable rates" simply are not plausible.

---

[5]  The Court may consider documents that are referenced in and central to Next Health's Counterclaims. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Although Next Health has not identified *any* of the plans, it has insisted that UnitedHealth Group, Inc. is a proper party over which the Court has personal jurisdiction by virtue of ERISA's nation-wide service of process. Since UnitedHealth Group, Inc. is the named "plan administrator" of only one plan—the UHC plan—it may very well be that the UHC Plan is referenced in the Counterclaims and is therefore central to recovery of benefits under its terms.

2.   <u>Count Two should be dismissed because it is just a recast claim for unpaid benefits</u>.

In Count Two, Next Health asserts a breach of fiduciary duty claim, under ERISA § 1132(a)(3). But this claim is duplicative of Count One (Next Health's claim for benefits and to enforce the terms of the plan under 1132(a)(1)(B)). Both rely on the same allegations. [*See* ECF No. 72, at ¶¶ 429, 432]. In Count Two, Next Health seeks unspecified declaratory and injunctive relief, as well as "economic damages relating to the loss of business value caused by UHC's intentional withholding of claims it was obligated to evaluate for payment." [*Id*. ¶ 433].

The assertion of a claim for monetary relief under this § 1132(a)(3) is not appropriate here. This "catchall" provision "acts as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 ***does not elsewhere adequately remedy***." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (emphasis added). Specifically, a plaintiff "may not simultaneously maintain [a] claim for breach of fiduciary duty" under § 1132(a)(3) and while also pursuing a benefits claim under §1132(a)(1)(B), even if the benefits claim is ultimately unsuccessful. *Tolson v. Avondale Indus., Inc*., 141 F.3d 604, 610 (5th Cir. 1998); *Rhorer v. Raytheon Eng'rs and Constructors, Inc*., 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds* by *Cigna Corp. v. Amara*, 563 U.S. 421 (2011). As this Court has acknowledged: "ERISA § 503 does not give rise to a private right of action for compensatory relief." *See Texas General*, 2016 WL 3541828, at *9.  Moreover, breach of fiduciary duty claims cannot be pursued where (as here) the crux of the dispute is clearly over unpaid plan benefits. *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co*., No. 3:16-CV-2355-G, 2017 WL 4868180, at *9 (N.D. Tex. Oct. 27, 2017) (Fish, J.) (dismissing breach of fiduciary duty claim, explaining: "Because it is plain from the Third Amended Complaint that the root of AP's suit is its claim for payment of benefits under the Plan, the court is satisfied that AP still has an adequate avenue for

12

redress through its claim under 29 U.S.C. § 1132(a)(1)(B)—assuming that AP can cure the above-mentioned deficiencies in its complaint."). Count Two must therefore be dismissed for this additional reason as well.

          3.   <u>Count Four should be dismissed because Next Health does not plausibly allege that it requested plan documents from UHC.</u>

The duty to provide certain plan documents under ERISA arises only upon request, and liability under the penalty provision occurs only if such information is not provided timely.  29 U.S.C. § 1132(c)(1) (B) (regarding penalties for failing to mail material "requested to the last known address of the requesting participant or beneficiary **within 30 days after such request**….") (emphasis added). "In other words, § 1132(c)(1) contains a temporal element." *Brown v. Aetna Life Ins. Co*., 975 F. Supp. 2d 610, 619-20 (W.D. Tex. 2013) (dismissing a claim for penalties, explaining: "Without approximate dates or any allegations whatsoever of Defendant's eventual compliance, or even the temporal relationship between the request and the compliance, the Court is unable to evaluate whether Plaintiff can satisfy every element of his § 1132(c)(1) claim, including the thirty day deadline.").

The Counterclaims are devoid of any facts plausibly showing that Next Health requested plan documents from UHC. Instead, Next Health merely recites the ERISA provisions that require the statutorily defined plan administrator to provide certain documents on request, adding a conclusory statement that UHC is liable "[b]ecause UHC's acts, omissions, and failure to furnish requested information violated 29 U.S.C. § 1024(b)(4) . . . ." [ECF No. 72, at ¶ 444]. But Next Health does not identify a single request it made, a single plan document that was requested, or when a request was made that would impose a deadline to provide information. Absent facts demonstrating a request for plan documents for an ERISA-governed plan, there is no plausible claim that UHC could be liable for failing to supply plan documents in a timely

fashion.

Additionally, because Next Health has not identified the subject plans at issue, its assertion that UHC was the (statutorily defined) "plan administrator" of every plan is merely conclusory and should be ignored. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Boldt v. Dow Chem. Co. Voluntary Grp. Acc. Ins. Plan*, No. 6:06-CV-25, 2007 WL 2329873, at *15 (S.D. Tex. Aug. 15, 2007) (Rainey, J.) (holding only a statutorily defined "plan administrator" is potentially subject to liability under § 1132(c)). Count Four should therefore be dismissed for this additional reason as well.

## II.   PURSUANT TO RULE 12(f), IMMATERIAL, IMPERTINENT, AND SCANDALOUS ALLEGATIONS SHOULD BE STRUCK FROM NEXT HEALTH'S COUNTERCLAIMS.

Next Health's 41-pages of Counterclaims for ERISA relief are rife with incendiary allegations that plainly would be inadmissible at trial, and therefore are immaterial, impertinent, and scandalous under Rule 12(f). The first 21 paragraphs and nearly 10 pages, by Next Health's own styling, do not contain "Relevant Facts." These 10 pages (and more) are an inappropriate attempt to prejudice UHC publicly and in the eyes of the jury that may view the pleadings, with allegations that are irrelevant and impertinent to their Counterclaims.

The Counterclaims contain multiple allegations that are not only completely irrelevant to any element necessary to prove any of Next Health's four ERISA Counts, but also attempt to sully UHC via impermissible character and "prior bad act" allegations. Indeed, six of the first nine paragraphs of the Counterclaims are inappropriate recitations of lawsuits brought against UHC in completely unrelated matters - the sole purpose of which is to paint UHC as a bad actor via the prohibited propensity inference. Next Health includes several allegations regarding profit generated by UHC and even particular salaries and bonuses of executives employed by UHC's

14

parent company. Such allegations have no bearing on any aspect of any element of the ERISA claims alleged by Next Health and are nothing more than gratuitous "cheap shots."

Next Health's Counterclaims also include allegations describing offers and statements that both sides continue to agree were made during the course of negotiations that were intended to be kept confidential. Even in the absence of such an agreement, disclosing the content of settlement negotiations in a pleading is inappropriate under Rule 12(f) and Federal Rule of Evidence 408. Given that such allegations are also irrelevant to any element of the ERISA Counts, Next Health's sole motivation in breaching the confidentiality agreement could only be to prejudice UHC by disclosing the existence and substance of such negotiations.

People, and corporations, do not like to be sued. It should go without saying that defendants are never happy about, and generally disagree with, the allegations in a lawsuit. When the allegations, however, have absolutely no connection to the causes of action at issue in the lawsuit, and were included solely to impugn the character of a defendant, the only appropriate remedy is to strike the allegations.  Importantly, striking these allegations would not in and of itself lead to dismissal of any of Next Health's ERISA Counts – this, of course, is indicative of the completely extraneous nature of the allegations.

**A.  The Rule 12(f) standard arms the Court with the authority to strike extraneous and inappropriate allegations on the grounds that they are immaterial, impertinent or scandalous.**

The Federal Rules of Civil Procedure provide a means to strike extraneous materials from pleadings. Upon a motion made by a party before responding to a pleading, the court may strike any redundant, immaterial, impertinent or scandalous matter. FED. R. CIV. P. 12(f).

A motion to strike may be appropriate if the defendant shows that the challenged allegations are immaterial because they bear no possible relation to the litigation, and that the defendant is prejudiced. *Sadler v. Benson Motors Corp.*, No. CIV.A. 97–1083, 1997 WL 266735,

15

at *1 (E.D. La. May 15, 1997). Immateriality can be established by showing the challenged allegations have no possible bearing on the subject matter of the controversy. *Id.*

Impertinence consists of any allegation not relevant to the issues involved in the action and which could not be put in issue or entered into evidence. *Oaks v. Fairhope,* 515 F. Supp. 1004, 1032 (S.D. Ala 1981). "A matter is deemed 'scandalous,' for purposes of Rule 12(f), when it improperly casts a derogatory light on someone, usually party to the action." 61A Am. Jur. 2d Pleading § 471; *see also Alvarado-Morales v. Digital Equip. Corp.,* 843 F.2d 613, 617 (1st Cir. 1988). Other courts have stated that "[a]llegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Dist. Co.,* 961 F.2d 654, 664 (7th Cir. 1992). This can "consist of any unnecessary allegation which reflects cruelly upon the moral character of an individual." *Id.* Those allegations may even include references to other litigation. *See Cowell v. Utopia Home Care, Inc.,* 144 F. Supp. 3d 398, 406 (E.D. N.Y. 2015); *Erby v. Webster University,* No. 3:13-518-JFA-SVH, 2013 WL 4586018, at *2 (D.S.C. Aug. 28, 2013).

It is true that Courts often characterize motions to strike as "generally disfavored" when they are used as a delay tactic or to defer resolution on the merits. *See, e.g., United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012). However, motions to strike may be granted where they serve a legitimate purpose and are interposed to remove unnecessary clutter from the case, or when the allegations have no possible relevance to the controversy and may cause prejudice to one of the parties. *Marceaux v. Lafayette Consol. Gov't*, No. 6:12–cv–01532, 2012 WL 5197667, at *2 (W.D. La. Oct. 18, 2012); *Sefton v. Jew*, 204 F.R.D. 104, 106-107 (W.D. Tex. 2000) (finding that in case revolving around copyright infringement associated with website images, a description of images as child pornography or bestiality had no possible relevance to the case).

16

Next Health's Counterclaims are rife with allegations "having no possible relevance" that are intended to "cause prejudice." In an age where information can be posted online[6] and instantly shared with a majority of the planet, nothing about the "publicness" of a piece of information makes it any less scandalous—regardless of whether it is true or not.

**B.** **The elements of the Counts in Next Health's Counterclaims illustrate that the extraneous allegations have no possible relevance and are impertinent, immaterial, or scandalous.**

The immaterial, impertinent, and scandalous nature of the majority of the allegations in the Counterclaims is striking upon examination of the four Counts. While the Counterclaims span an inflated 41 pages because of the inappropriate allegations, all four Counts are laid out in less than six pages. Each Count is based on an alleged violation of a discreet ERISA provision.

The relevant elements of the Counts are: whether Next Health has standing to pursue ERISA benefits and non-benefits claims as an assignee of UHC Beneficiaries; whether, as an assignee, Next Health can show that the administrative record lacks support for UHC's benefit determinations under ERISA plans, which are subject to review only for abuse of discretion; whether UHC breached a fiduciary duty causing harm *to the plan,* independent from Next Health's bid to enforce plan terms and seek benefits; whether the plans had reasonable claim and appeals procedures and whether they were followed; and whether UHC was a plan administrator and, if so, whether Next Health made requests for certain plan documents that UHC failed to provide within 30 days of the request.

Importantly, **none of the elements** of any of these counts require proof of bad faith, malice, intent, pattern and practice, motive, plan, knowledge, opportunity, prior bad acts, prior

---

[6] Indeed, Next Health posted many of the inflammatory and immaterial paragraphs contained in its counterclaims on an online message board maintained by cafepharma.com before the counterclaims were even filed with the Court.

lawsuits, or conduct during settlement negotiations. On a basic level, Next Health's Counterclaims recovery will boil down to whether Next Health, standing in the shoes of UHC's members, was entitled to those members' benefits for services provided.

Next Health appears to be confused regarding which "hat" it is wearing as Counterclaim Plaintiff. Next Health has no standing or right to bring ERISA-based Counterclaims against UHC *on its own behalf*. Next Health's causes of action are solely premised on its receipt of supposedly valid assignments *from UHC's members*. Next Health's standing and rights are completely based on stepping into the shoes of UHC beneficiaries via these supposedly valid assignments. But there should be no mistake that the obligations that UHC owed, and allegedly breached, were to its beneficiaries, not Next Health. Nevertheless, Next Health's bad faith "theory of the case" is premised on UHC's supposed bad-faith desire to harm Next Health's interests and put it out of business:

> Since September of 2016, UHC has actively deceived Next Health into providing approximately $36 million in additional laboratory testing services to UHC beneficiaries with out-of-network benefits despite never intending to pay for the value of those – or any other – laboratory testing services provided by Next Health. . . Discovery in this case will show that the "medical necessity denial was a sham intended to put Next Health out of business.

[ECF No. 72, at ¶ 352].

> "Upon information and belief, UHC's review of Next Health's operations and the discussions held in late 2016 were a sham as UHC prepared to file litigation in an attempt to put Next Health out of business."

[*Id.* at ¶ 411].

Even accepting these fanciful allegations as plausible, any such desire or intent *to harm Next Health* is immaterial *as to UHC beneficiaries' interests* – the only interests at issue in the Counterclaims. Next Health is simply wearing the wrong "hat." Moreover any attempt to argue that supposed bad-faith negotiations are relevant to whether UHC put its interests ahead of its

beneficiaries by attempting to shift these costs to the beneficiaries is meritless by Next Health's own admission. Implicit in Next Health's theory is an admission that it never intended to actually collect money from individuals – their entire business model is/was premised on targeting the portion of an individual's bill that was owed to that individual by his or her insurance plan and then writing off the rest. Next Health never balance billed, or intended to balance bill, any of the UHC beneficiaries from whom it had received assignments. [ECF 72 at ¶416]. This systematic failure to balance bill is at the very core of the scam giving rise to this litigation. But given that Next Health never actually held members financially responsible for services, UHC's failing to pay Next Health could ***never*** harm the members. It could only harm Next Health. Bad faith allegations in conduct toward Next Health, even if true, have no possible relevance to the stated claims.

The opening paragraph of the Counterclaims is an excellent example of the over-the-top, and irrelevant, nature of the allegations that permeate the document:

> 334.  This litigation is a shakedown by United Healthcare (UHC).  Seizing on an opportunity presented by allegedly unscrupulous third-party marketers, UHC is attempting to use litigation to force a small, out-of-network laboratory services provider out of business.  Why is UHC stooping to corporate bullying as a tactic?  For one, doing so sends a message to other out-of-network providers in Texas – a thriving marketplace for medical innovation – that they must agree to in-network contracts at punitively unfavorable rates or be similarly driven out of existence.  For another, winning the lawsuit would allow them to recoup $100 million already paid for legitimately provided laboratory services and avoid paying for $36 million in legitimately provided laboratory services provided since UHC "flagged" Next Health in 2016.  No other payer, including Medicare, has similarly stopped paying Next Health claims, even since UHC publicly filed this litigation.  Even if the lawsuit does not succeed, if it puts Next Health out of business, UHC pockets the $36 million that should have been paid on behalf of UHC beneficiaries but was instead withheld without any legitimate justification.  In either scenario, 500 Next Health employees lose their jobs, tens of thousands of UHC beneficiaries are denied legitimate out-of-network benefits, and UHC keeps $36 million to boost its profits and pay millions in bonuses to the management team who authorized the shakedown in the first place.

19

Why are Counterclaims based solely on recovery under ERISA reflecting at all on UHC's motives in filing its Complaint against Entity Defendants?  How does alleging that UHC is trying "to force [Next Health],  a small, out-of-network laboratory services provider out of business,"[7] or that UHC's Complaint will cause Next Health's employees to lose their jobs, support any aspect of whether Next Health is entitled to reimbursements pursuant to assignments of UHC plan beneficiaries' benefits? How does accusing UHC of being a "corporate bully" help prove these ERISA claims?  These questions are, of course, rhetorical.  The only rational explanations for including allegations of this nature are to publicly shame UHC or to improperly influence a jury based on sympathy, corporate hatred, or inappropriate propensity inferences.

If the first paragraph stood alone as an outlier, UHC would not be filing a Rule 12(f) Motion. It does not stand alone, however.  Given how pervasive the inappropriate allegations are, UHC will not discuss each paragraph, individually.  Instead, UHC identifies the categories of unacceptable allegations, and then identifies the paragraphs that fall within each category.

The first category addresses allegations disseminating the contents of confidential settlement negotiations. The second category addresses "bad actor" attacks of the type alleged in paragraph 1, *supra,* and references to unrelated lawsuits involving UHC.

### 1.    Disclosure of confidential settlement negotiations

Over a period of several months, from September 2016 through January 2017, UHC and Next Health's representatives engaged in a series of discussions in an attempt to resolve UHC's claims against Next Health. UHC characterizes all of these discussions as settlement discussions. Next Health apparently characterizes these discussions as partly informational and partly

---

[7] Falsity of an allegation alone is admittedly not a ground for striking. But UHC would be remiss to not point out the facial absurdity of this characterization given that Next Health acknowledges within this very same paragraph that it has received over $100 million from UHC alone over the period from 2011 to 2016 (fraudulently or not).

negotiation. Both sides agree that the discussions pertaining to negotiations were undertaken with the expectation that they were to be kept confidential. Next Health's Chief Compliance Officer, who is the only person at Next Health who took part in all the discussions, specifically remembers this oral agreement: "During the course of our prior discussions, I had understood that the negotiations over the terms of a future in-network contract with UHC were confidential, and that UHC was going to prepare a notice memorializing this understanding." App. at 61. Next Health apparently takes the position now that, despite this unequivocal oral understanding, confidentiality was no longer required because the oral agreement was not followed up in writing. There is no legal basis for this position.[8]

Next Health's Counterclaims inexplicably include several pages of "allegations" consisting of lengthy and detailed descriptions of purported settlement terms and other aspects of a purported settlement, including specific dollar amounts of settlement offers. [ECF No. 72, ¶¶ 347, 408-412]. These allegations disregard the terms of the confidentiality agreement, which was agreed to at Next Health's lawyers' insistence. And Next Health has egregiously flouted the admonitions of Rule 408 which would prohibit the use of such discussions even if the confidentiality agreement had never been agreed to as an extra precaution.

Courts in this district have recognized that allegations describing settlement efforts proscribed by Rule 408 may be stricken under Rule 12(f). *See Berry v. Lee*, 428 F. Supp. 2d 546, 562-564 (N.D. Tex. 2006); *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.,* 771 F. Supp. 2d

---

[8] Parties to an agreement often reduce the agreement to writing so that there cannot be a future disavowal of the agreement. It is inconceivable that a party would admit to the oral agreement and then proudly take the position that it did not have to abide by the agreement because the agreement was not reduced to writing. But that is the puzzling position advanced by Next Health here. A written agreement was in fact signed here but only references a single date rather than all the dates on which negotiations took place. To the extent there is a "factual" dispute about the dates covered by the written agreement, it is immaterial as there is no factual dispute that an oral agreement was reached providing confidentiality for all negotiations. App. at 50 and 62.

680, 708 (S.D. Tex. 2011) ("As for Paragraph 27, the Court does find that this paragraph contains confidential statements made during the course of mediation, and their disclosure is contrary to the Confidentiality Agreements, as well as the relevant provisions of Illinois and Texas law. Therefore, this paragraph may be struck from the Second Amended Complaint.").

Additionally, numerous courts throughout the country subscribe to the same view on the inappropriateness of citing settlement negotiations in a pleading. *See, e.g., Philadelphia.'s Church of Our Savior v. Concord Twp.,* No. 03-1766, 2004 WL 1824356, at *2 (E.D. Pa. July 27, 2004) (noting that pleadings may be stricken under Rule 12(f) as violating Rule 408 policies even though the latter rule is not directed at pleadings); *U.S. rel. Alsaker v. CentraCare Health Sys., Inc.,* No. Civ. 99-106, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) (courts routinely grant motions to strike allegations in pleadings that fall within Rule 408); *see also Kelly v. LL Cool J.,* 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (granting motion to strike settlement negotiations as prejudicial and immaterial); *Foster v. WNYC-TV,* No. 88-Civ-4584, 1989 U.S. Dist. LEXIS 13724, *17 (S.D. N.Y. Nov. 17, 1989) (court not only struck settlement letters attached as exhibits to 12(b) opposition, but also indicated willingness to entertain a Rule 11 sanctions motion); *Agnew v. Aydin Corp.,* No. 88–3436, 1988 WL 92872, *4 (E.D. Pa. Sept. 6, 1988) (striking parts of complaint pursuant to Rule 408 because they referenced settlement negotiations for purpose of showing liability); *U.S. Transmission Systems v. Americus Ctr.*, No. 85–7044, 1986 WL 13838, at *2 (E.D. Pa. Dec. 3, 1986) (striking allegations from a complaint as they fall within Rule 408 and are thus clearly inadmissible); *Scott v. Township of Bristol*, No. 90–1412, 1991 WL 40354, at *5 (E.D. Pa. Mar. 20, 1991) (striking allegations referencing settlement discussions as immaterial and of questionable probative value).

In *Berry*, Judge Fitzwater denied a motion to strike because it was unclear whether the statements at issue were truly made during confidential negotiations. There is no such deficiency here. The confidentiality agreement is attached to this Motion. App. at 55. The Affidavit of UHC's representative who engaged in the discussions is attached to this Motion. App. at 49-53. The Affidavit of Next Health's Chief Compliance Officer, acknowledging his understanding of an additional oral confidentiality agreement, is attached to this Motion. App. at 62. And at least four paragraphs of the Counterclaims themselves refer to the settlement "negotiations" or "discussions." [ECF No. 72,¶¶ 408-412].

The brazen inclusion of the settlement negotiation allegations prejudices UHC by putting these confidential discussions in the public domain. To avoid additional prejudice and to avoid being in violation of Rule 408 themselves, UHC will not expand on the inaccuracies in the inappropriate assertions beyond denying them and stating that the parties engaged in discussions.

If UHC had known that its conversations were not confidential, it would not have engaged in such conversations. App. at 52. Allowing these allegations to remain not only chills UHC from entering into future negotiations with Next Health, but also will chill defendants everywhere from entering into negotiations with the uncertainty of what may be publicly disclosed. Thus, not striking the allegations is prejudicial to public policy as well. Next Health's allegations in footnote 1 as well as paragraphs 347 and 408-412 must be stricken.

2. <u>Allegations of bad character and prior bad acts</u>

Derogatory statements and name calling have no place as extraneous allegations that "add[] nothing to the material allegations" of the pleading, "appear[] only for inflammatory effect," and are "immaterial, scandalous, and highly prejudicial." *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1479 (C.D. Cal. 1996) (ordering term "slave sweatshop" stricken from false imprisonment complaint even where several defendants had pleaded guilty to slavery charges).

Courts will also strike innuendo or direct reference to alleged prior bad acts or prior litigation involving a defendant when the conduct alleged is not related to an issue in the litigation.[9] *See, e.g., Doan v. Singh*, No. 1:13–cv–00531–LJO–SMS, 2013 WL 3166338, at *14 (E.D. Cal. June 20, 2013) (if plaintiffs choose to keep allegations of prior bad acts "in an amended complaint the passages must be essential and necessary to their claims for relief," and cannot "improperly cast a derogatory light on defendants."); *Sirazi v. Gen. Mediterranean Holding, SA*, No. 12 C 0653, 2013 WL 812271, at *9 (N.D. Ill. Mar. 5, 2013) (defendants' prior convictions not germane to instant action, and therefore were stricken); *Anderson v. Davis Poly & Wardell LLP*, 850 F. Supp. 29 392, 417 (S.D.N.Y. 2012) (the allegations of a defendant's misconduct in disposing of medications is so "tangential to Plaintiff's claim for [disability] discrimination that evidence supporting them would not be admissible."); *Schultz v. Braga*, 290 F. Supp. 2d 637 (D. Md. 2003) (allegations about prior shooting incident by FBI agent were irrelevant to case at bar and also prejudicial to his reputation and so allegations were stricken).

Next Health's Counterclaims contain numerous, scandalously-worded allegations regarding entirely unrelated lawsuits in which UHC was a party, all involving claims or conduct that have absolutely nothing to do with Next Health's ERISA claims here. On the face of the Counterclaims, Next Health makes no effort at all to tie the gratuitous allegations to its legal theories or requested relief. And beyond the lack of direct allegations showing relevance, there is also no apparent or implicit relevance to the claims alleged.

---

[9] During the meet and confer on this Motion, Next Health's counsel suggested that the prior bad act allegations in the Counterclaims were no different than allegations made by UHC in its Complaint. For example, UHC's Complaint references the indictment of Next Health owners Hillman and Narasov, who were indicted for involvement in a similarly structured kickback scheme in the Texas health care market. UHC's allegations are relevant to prove intent, motive, knowledge, and plan relating to its fraud counts. While allegations of prior bad acts may be relevant to fraud counts, they are not relevant to Next Health's ERISA counts, which are brought standing in the shoes of UHC's members.

Next Health's intention in causing prejudice to UHC is apparent. Prejudice is defined as "[d]amage or detriment to one's legal rights or claims." *Black's Law Dictionary* PREJUDICE (10th ed. 2014). Prejudice to a party is the very reason that the protections afforded by Federal Rules of Evidence 404(a)(1) and 404(b)(1) exist. Rule 404 prohibits an opponent's use of general prior bad character or "use of prior bad acts to prove a defendant has a propensity to commit acts of that sort." *United States v. McGlothin,* 705 F.3d 1254, 1265 (10th Cir. 2013). Next Health's allegations are a back door attempt to sully and prejudice UHC prospectively, since it will not be able to admit evidence of this sort at trial. A chart referencing the approximately 25 paragraphs that should be stricken can be found in the Appendix. App. at 63-64.

## CONCLUSION

For the above and foregoing reasons, this Court should GRANT UHC's Motion to Dismiss; or, in the alternative, ORDER Next Health to provide a more definite statement regarding its Four Counts; and, if any Counts remain, STRIKE the numerous paragraphs that contain immaterial, impertinent, and scandalous allegations from the Counterclaims.

Respectfully submitted, this 6th day of December, 2017.

**WEINBERG, WHEELER, HUDGINS GUNN & DIAL, LLC**

  */s/ Stephen W. Mooney*
STEPHEN W. MOONEY, ESQ.
Texas Bar No.: 14319100
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Telephone: 404-876-2700 | Facsimile: 404-875-9433
Email: smooney@wwhgd.com

ADAM J. SINTON, ESQ.
D. LEE ROBERTS, ESQ.
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
Telephone:  702-938-3838 | Facsimile:  702-938-3864
Email:    asinton@wwhgd.com
             lroberts@wwhgd.com

25

**FIGARI & DAVENPORT, LLP**

ANDREW G. JUBINSKY, ESQ.
RAYMOND E. WALKER, ESQ.
901 Main Street, Suite 3400
Dallas, TX   75202-3796
Telephone:  214-939-2000 | Facsimile: 214-939-2090
Email: andy.jubinsky@figdav.com
          ray.walker@figdav.com

*Counsel for Plaintiffs/Counterclaim-Defendants*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of December, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system pursuant to Local Rule 5.1(d), which will automatically send notification of such filing to all counsel of record.

Ernest Martin, Jr., Esq.
Micah Skidmore, Esq.
Christopher A. Rogers, Esq.
Nicole Sommerville, Esq.
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX  75219

James S. Bell, Esq.
James S. Bell, PC
2808 Cole Avenue
Dallas, TX  75204

*Attorneys for Counterclaim-Plaintiffs*

I HEREBY FURTHER CERTIFY that we have sent a copy of the foregoing via regular U.S. Mail to the following:

Kirk Zajac
15825 Garrison Cl
Austin, TX  78717-3053

Erik Bugen
1504 West Avenue
Austin, TX  78701

*Pro Se*

*Pro Se*

Respectfully submitted, this 6th, day of December, 2017.

**WEINBERG, WHEELER, HUDGINS
GUNN & DIAL, LLC**

  */s/ Stephen W. Mooney*
STEPHEN W. MOONEY, ESQ.
Texas Bar No.: 14319100
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Telephone: 404-876-2700 | Facsimile: 404-875-9433
Email: smooney@wwhgd.com

*Counsel for Plaintiffs/Counterclaim-Defendants*

27

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that counsel for Plaintiffs/Counterclaim-Defendants has complied with the meet and confer requirements of Local Rule 7.1(a) by engaging in two teleconferences with opposing counsel Micah Skidmore on October 19 and 25, 2017.

*/s/ Stephen W. Mooney*
STEPHEN W. MOONEY, ESQ.
Texas Bar No. 14319100
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Telephone: 404-876-2700 | Facsimile: 404-875-9433
Email: smooney@wwhgd.com

*Counsel for Plaintiffs/Counterclaim Defendants*