# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITEDHEALTHCARE SERVICES, INC. et al. | § § § § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-0243-S |
| | § § § | |
| NEXT HEALTH, LLC et al. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses (1) the Motion to Dismiss Plaintiffs' Complaint filed by Defendants American Laboratories Group LLC, Medicus Laboratories LLC, Next Health LLC ("Next Health"), US Toxicology LLC, and United Toxicology LLC (collectively, the "Entity Defendants") [ECF No. 18] and (2) the Motion to Dismiss the Counterclaims and/or Strike Portions of the Counterclaims filed by Plaintiff UnitedHealthcare Services, Inc., Plaintiff UnitedHealthcare Insurance Company, and Counterclaim-Defendant UnitedHealth Group, Inc. (collectively, "United") [ECF No. 93]. For the reasons that follow, the Court grants in part and denies in part the Entity Defendants' motion. The Court denies United's Motion to Dismiss, but grants United's Motion for a More Definite Statement.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Chief Judge Barbara M.G. Lynn to the docket of this Court on March 8, 2018.

United[1] initiated this lawsuit on January 26, 2017. United is a provider of health care insurance, administration, and/or benefits pursuant to a variety of health care benefit plans and

---

[1] UnitedHealth Group, Inc. was not a party when the Complaint was filed and is only incorporated in the definition of "United" when the Court is discussing United's Motion to Dismiss.

insurance policies. Compl. ¶ 21. Many of United's private employer-sponsored plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* ¶ 24. Plans are generally classified as either Self-Funded Plans or Fully-Insured Plans. *Id.* ¶ 26. United is obligated to approve claims for health benefits that satisfy the terms of either type of plan. *Id.* ¶ 31.

United uses a two-tier provider system for its plans, which allows members to obtain healthcare services from network or out-of-network ("OON") providers. *Id.* ¶ 33. Network providers enter into agreements with United under which United agrees to reimburse them at specified rates. *Id.* ¶ 34. In return, the providers agree not to "balance bill" United's members. *Id.* By contrast, OON providers do not enter into any agreement with United, and they generally bill members at the rates they set. *Id.* ¶ 35. United's plans typically require members to contribute to the costs of care by OON providers. *Id.* ¶ 36. The members typically pay the amount by which an OON provider's charges exceed the amount payable under the plan. *Id.* United relies on its members' sensitivity to the greater out-of-pocket costs to ensure that they only seek OON providers' services when they are necessary and reasonably priced. *Id.* ¶ 39. When a member receives services from an OON provider, he or she usually pays the full amount billed and then submits a claim to United for partial reimbursement. *Id.* ¶ 40.

Certain providers, such as Next Health's subsidiaries, offer laboratory testing that is ancillary to a patient's encounter with a medical provider. *Id.* ¶¶ 47, 74. The Centers for Medicare & Medicaid Services regulate such ancillary testing through the Clinical Laboratory Improvement Amendments ("CLIA").[2] *Id.* ¶ 48. Before a provider can perform testing on human specimens, it

---

[2] CLIA regulations "include federal standards applicable to all U.S. facilities or sites that test human specimens for health assessment or to diagnose, prevent, or treat disease." Clinical Laboratory Improvement Amendments (CLIA), CDC, https://wwwn.cdc.gov/clia/ (last updated June 11, 2018).

must be licensed under CLIA. *Id.* ¶ 49. The ancillary testing services relevant to this lawsuit at this time are drug testing and pharmaco-genetic ("PG") testing. *Id.* ¶ 51.

Drug tests range in complexity from point of care tests, which are performed in a physician's office and provide nearly immediate results, to quantitative confirmation tests, which are performed in a CLIA-licensed laboratory and provide forensic-level accuracy. *Id.* ¶ 53. PG testing refers to testing individuals for specific genetic variations that may affect the way they respond to certain medications. *Id.* ¶ 63. PG testing is generally performed by CLIA-certified laboratories and can be very expensive. *Id.* ¶¶ 65-66.

To request off-site testing, a medical provider completes a requisition form. *Id.* ¶ 67. He or she sends that form to the laboratory, along with the patient's specimen. *Id.* Requisition forms generally include the diagnoses that support the medical necessity of the testing and a medical provider's signature. *Id.* ¶ 68.

United alleges that the Entity Defendants have defrauded United in connection with their provision of OON testing services to United members. *See, e.g., id.* ¶ 83. United contends that Next Health controlled and operated four subsidiary laboratories – American Laboratories Group, Medicus Laboratories, United Toxicology, and U.S. Toxicology – that submitted claims to United. *Id.* ¶ 74.

United alleges that the Entity Defendants paid bribes and kickbacks to referral sources in exchange for requesting out-of-network lab services from the Entity Defendants; performed and billed for lab services that were not ordered by medical providers; inflated claims by utilizing standing protocols for blanket testing, regardless of patients' medical histories, clinical conditions, or needs; billed for services that the Entity Defendants did not perform; and billed charges that the Entity Defendants never intended to collect from patients. *Id.* ¶ 2. United contends that, as a result

3

of this scheme, it paid the Entity Defendants more than $100 million over the span of approximately five years. Pls.' Br. 1.

The Entity Defendants filed their Answer to Plaintiffs' Original Complaint and Counterclaims on November 15, 2017, asserting four ERISA-based causes of action against United. The Entity Defendants seek: (1) penalties for United's alleged failure to provide requested plan documents; (2) a remand of all claims it has submitted to United since 2011 for a full and fair review; (3) declaratory and injunctive relief as well as economic damages for an alleged breach of fiduciary duty; and (4) to recover benefits under 29 U.S.C. § 1132(a).

The parties appeared for oral argument before this Court regarding their respective motions to dismiss on May 22, 2018.

## II.   LEGAL STANDARD

### A.   *The Rule 12(b)(6) Standard*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A

4

plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2012). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

#### A. *The Entity Defendants' Motion to Dismiss*

The Entity Defendants raise eight arguments in their Motion to Dismiss: (1) United's state law claims are conflict-preempted by ERISA; (2) United's state law claims are preempted by the Federal Employee Health Benefits Act ("FEHBA"); (3) United is not authorized to pursue claims on behalf of any Federal Employee Health Benefit Plan; (4) United's conspiracy to commit fraud claim fails to state a claim; (5) United's alter ego claim is not a separate cause of action; (6) United's Complaint fails to allege fraud with sufficient particularity; (7) United's Lanham Act claim is barred by limitations; and (8) United's Texas Theft Liability Act ("TTLA") claim is barred by limitations.

#### 1. *ERISA Preemption*

The Entity Defendants contend that United's state law misrepresentation-based claims are conflict-preempted by ERISA. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "Although the term 'relate

5

to' is intended to be broad," the Supreme Court has specifically stated that "pre-emption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Mayeaux v. La. Health Svc. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) ("*Travelers*")).

ERISA's "objectives include establishing uniform national safeguards 'with respect to the establishment, operation, and administration of [employee benefit] plans,' and 'establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans.'" *Id.* at 432 (quoting 29 U.S.C. § 1001(a), (b)). "The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657.

Based on these objectives, the Fifth Circuit finds state law claims preempted if "(1) [t]he state law claim addresses an area of exclusive federal concern, such as the right to receive benefits . . .; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux*, 376 F.3d at 432. The party asserting ERISA preemption bears the burden of proof on both elements. *See Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).

The Court finds that the Entity Defendants have not satisfied either prong of this test. First, United's misrepresentation-based causes of action do not address an area of exclusive federal concern; they address the veracity of the information provided by the Entity Defendants. *See Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, Civ. A. H-12-1206, 2016 WL 7496743, at *3 (S.D. Tex. Dec. 31, 2016) (holding Aetna's fraud claims against provider for monies that "[provider] tricked [Aetna] into paying" were not preempted, as ERISA "plans are merely the context of

[provider's] fraud"); *Fustok v. UnitedHealth Group, Inc.*, Civ. A. No. 12-CV-787, 2013 WL 2189874, at *6 (S.D. Tex. May 20, 2013) ("United's common law fraud claim is not preempted simply because it may have a tangential impact on employee benefit plans.").

The Entity Defendants' attempt to frame United's misrepresentation-based causes of action as "a denial of [the Entity Defendants'] entitlement to payment on behalf of [United's] members for the healthcare claims at issue" is unavailing. Defs.' Br. 6. United's misrepresentation-based causes of action do not challenge whether benefits were administered correctly, but rather whether the Entity Defendants supplied United with truthful and/or complete information in a manner consistent with the Entity Defendants' obligations under Texas law. *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385-86 (5th Cir. 2011). The Entity Defendants' attempt to tie the "materiality" element of United's misrepresentation-based causes of action to the interpretation of ERISA plan terms is equally unavailing. Defs.' Br. 9. Whether a provider's billing practices are tortious does not require interpretation of an ERISA plan. *See Fustok*, 2013 WL 2189874, at *5.

Second, United's misrepresentation-based causes of action do not "directly affect[] the relationships among traditional ERISA entities." *Mayeaux*, 376 F.3d at 432. Providers, like the Entity Defendants, are not traditional ERISA entities, and ERISA does not regulate the relationship between medical providers and plan fiduciaries or administrators. *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990). Moreover, "the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of La.*, 468 F.3d at 243. Even if the Entity Defendants ultimately show that they have valid assignments from United's members, and thus could constitute

traditional ERISA entities in some capacity, ERISA does not regulate the accuracy of information supplied by beneficiaries to ERISA plans, administrators, or fiduciaries. *See Lewis v. Bank of Am. NA*, 343 F.3d 540, 544 (5th Cir. 2003) ("[The plaintiff's] fraud . . . claims against the Bank, a non-fiduciary, and its employees bear little relationship to [ERISA's] objectives. Congress clearly did not intend to broadly immunize non-fiduciary parties such as the Bank from liability under traditional state law contract and tort causes of action."). For these reasons, the aspect of United's relationship with the Entity Defendants at issue in the misrepresentation-based claims is beyond the scope of ERISA preemption.

Accordingly, the Court denies the Entity Defendants' Motion to Dismiss based on their ERISA preemption argument.

### 2. *FEHBA Preemption*

The Entity Defendants contend that United's claims are preempted by FEHBA to the extent that United seeks reimbursement for claims submitted in connection with any federal employee health benefit plan(s). *See* 5 U.S.C. § 8902(m)(1). "The analysis for FEHBA preemption is similar to that of ERISA preemption," and the Court denies the Entity Defendants' FEHBA preemption argument for the reasons set forth above. *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*, Civ. A. No. H-11-2086, 2012 WL 3028107, at *2 (S.D. Tex. July 24, 2012); *see also Burkey v. Gov't Emps. Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir. 1993) (relying on ERISA precedent to determine FEHBA preempted state law claim for penalties).

### 3. *FEHBA Standing*

The Entity Defendants further allege that FEHBA precludes United's ability to bring causes of action on behalf of federal employee health benefit plans seeking reimbursement or subrogation. However, United's Complaint does not seek reimbursement or subrogation. United

8

adequately alleges that it has standing to recover the damages it seeks. Accordingly, the Court denies the Entity Defendants' Motion to Dismiss on the basis of FEHBA standing.

### 4. *Conspiracy to Commit Fraud*

The Entity Defendants contend that United failed to adequately plead its conspiracy claim because the Complaint is devoid of facts indicating that Next Health, Bugen, and Zajac agreed on the object of the conspiracy – to defraud United by obtaining funds for performing unnecessary lab services. *See Hey v. Irving*, 161 F.3d 7, 1998 WL 723819, at *2 (5th Cir. 1998) ("General conclusory charges of conspiracy with 'no specific allegation of facts tending to show a prior agreement' cannot survive a motion to dismiss." (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982))).

A plaintiff alleging conspiracy under Texas law must show: (1) a combination of two or more persons; (2) an object to be accomplished (either an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). "All the plaintiff must show for the alleged conspirators to be held jointly and severally liable is that they acted 'in pursuance of the *common purpose* of the conspiracy.'" *Bentley v. Bunton*, 94 S.W.3d 561, 619 (Tex. 2002) (quoting *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 928 (Tex. 1979)).

United alleges facts that, taken as true, indicate intentional and conscious commitment to the common purpose of the alleged conspiracy. For example, United alleges coordination among one or more of the Entity Defendants, Bugen, and Zajac to allegedly inform United members that they would not be financially responsible for one or more of the Entity Defendants' lab services.

United also alleges that the Entity Defendants performed and billed United for lab services despite receiving requisition forms from Bugen and Zajac that did not contain physicians' signatures.

This pattern of conduct, taken as true, supports United's conspiracy allegations. Thus, the Entity Defendants' Motion to Dismiss is denied as to United's conspiracy claim.

### 5. *Alter Ego*

United's Complaint sets out alter ego liability as a separate cause of action. The Entity Defendants correctly contend that alter ego is not an independent cause of action under Texas law. *See U.S. Bank N.A. v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 442 (5th Cir. 2014); *Perez v. Pan Am. Life Ins. Co.*, 70 F.3d 1268, 1995 WL 696803, at *2 (5th Cir. 1995). United responds that it only intended to plead alter ego as a theory of attribution of liability to Next Health for the conduct of its subsidiary labs. Alter ego is a recognized method of piercing the corporate veil under Texas law. *See In re Grothues*, 226 F.3d 334, 337 (5th Cir. 2000); *Perez*, 1995 WL 696803, at *2. Therefore, the Court grants the motion to the extent that United pleaded alter ego as a separate cause of action. However, the Court will allow the allegations, to the extent United intends to rely upon them as a theory of attribution of liability to Next Health for the conduct of its subsidiary labs, to remain part of the Complaint.

### 6. *Fraud*

United alleges that the Entity Defendants' lab services claims contained at least six different types of misrepresentations or omissions. The Entity Defendants argue that the misrepresentations described in the Complaint are not alleged with sufficient particularity.

United must plead the elements of its fraud claim with the heightened particularity required by Rule 9(b). *See, e.g., Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 914 (N.D. Tex. 1998). "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Put simply, Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The Entity Defendants point to several issues with United's fraud allegations. First, they argue that United failed to allege particularized misrepresentations regarding medical necessity or patient payment responsibilities. Second, the Entity Defendants argue that United failed to allege certain other misrepresentations with particularity. These include misrepresentations as to patient assignments of OON benefits, physician authorizations of claims submitted to United, provider identities, medical necessity, and custom testing profiles. Finally, the Entity Defendants argue that some allegations in the Complaint are generic and do not specify the content or details of alleged misrepresentations.

The Court finds that United has pleaded sufficient allegations of particular claims submitted by the Entity Defendants, the types of alleged misrepresentations in (or omissions from) each claim, the date each claim was submitted to United, and the alleged reasons for the misrepresentations (or omissions). These pleadings, in conjunction with United's allegations about the mechanics of the scheme that produced the fraudulent claims, are sufficient to satisfy

11

United's pleading obligations.[3] *See Griggs v. Credit Sols. of Am., Inc.*, Civ. A. No. 3:10-CV-1291-D, 2010 WL 2976209, at *3 (N.D. Tex. July 28, 2010) ("When a plaintiff alleges a systemic pattern of fraud by the defendant . . . Rule 9(b) [does not] require[] [the plaintiff] to allege specific details of *every* alleged fraudulent claim . . . [but] [the plaintiff] must provide *some* representative examples of their alleged fraudulent conduct."); *U.S. ex rel. Tucker v. Christus Health*, Civ. A. No. 09-1819, 2012 WL 5351212, at *4 (S.D. Tex. Oct. 23, 2012) (finding that relator satisfied Rule 9(b) by describing manner in which Medicare billing was false and/or fraudulent, specifying time period during which false claims were submitted to Medicare, providing specific examples of each category of fraudulent billing, and explaining that Defendants received millions of dollars thereby). Thus, the Court denies the Motion to Dismiss as to United's fraud claim.

### 7. *Lanham Act Limitations*

The Entity Defendants contend that United's cause of action for Lanham Act false association[4] is time-barred. The Lanham Act prescribes no limitations period to assert false association claims, so federal courts applying Texas law have looked to "analogous state statutes of limitations" and have established a four-year limitations period for Lanham Act claims. *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859 (N.D. Tex. 2009). The time period to assert a claim "begins when the plaintiff knew or should have known of the infringement." *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)).

---

[3] When the facts relating to the alleged fraud are within the perpetrator's knowledge or control or where the alleged fraud occurred over an extended period of time and was complex, courts apply Rule 9(b) less stringently. *See U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998); *Thompson*, 125 F.3d at 903.

[4] United alleges that one of the Entity Defendants, United Toxicology, violated the Lanham Act by submitting claims to United so that United's members would be confused as to United Toxicology's association with United.

United alleges that it did not discover United Toxicology's fraudulent activity (nor the damages arising from such activity) until 2016. At this stage, the Court takes that assertion as true. Thus, the Court denies the Entity Defendants' Motion to Dismiss as to United's Lanham Act claim.

### 8. *Texas Theft Liability Act Limitations*

Claims under the TTLA are subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a). Therefore, with regard to claims under the TTLA, United is time-barred from recovering for any claims the Entity Defendants submitted to it before January 26, 2015, i.e., two years before the Complaint was filed. Therefore, the Court grants the Entity Defendants' Motion to Dismiss as to TTLA claims submitted before January 26, 2015.

### B. *United's Motion to Dismiss the Counterclaims or, in the Alternative, for a More Definite Statement*

United argues that the Entity Defendants' counterclaims should be dismissed under Rule 12(b)(1) or 12(b)(6) and/or that portions should be stricken under Rule 12(f). Alternatively, United argues that the Entity Defendants must provide a more definite statement under Rule 12(e). The Court denies the Motion to Dismiss but grants the Motion for a More Definite Statement and orders the Entity Defendants to replead more information in support of its claims, as outlined below.

The Court holds that the Entity Defendants must amend their claim spreadsheets, attached as Exhibits B and C to their Answer. For each claim, the Entity Defendants are instructed to identify the member who assigned their benefits and the plan or policy number under which such benefits arose. Further, the Entity Defendants must provide representative plan terms. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 729 (5th Cir. 2018) ("Alleging improper reimbursement based on representative plan provisions . . . may be sufficient to show plausibility under *Twombly* and *Iqbal* . . . ."). For the non-benefits claims, the

13

Court holds that the Entity Defendants must identify which member assignments were in effect during which time period and must include the specific language of each assignment identified.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Entity Defendants' Motion to Dismiss. The Court denies United's Motion to Dismiss and/or Strike Portions of the Counterclaims and grants United's Motion for a More Definite Statement. The Entity Defendants must file amended pleadings by July 31, 2018.

**SO ORDERED.**

SIGNED July 20, 2018.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**