UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES, INC.; UNITEDHEALTHCARE INSURANCE COMPANY, | § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:17-CV-0243-X-BT |
| v. | § § | |
| NEXT HEALTH LLC, et al., | § § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiffs United Healthcare Services, Inc. and UnitedHealthcare Insurance Company's (collectively, "UHC") motion for partial summary judgment [Doc. No. 721] and motion for case-ending sanctions [Doc. No. 714]. For the reasons below, the Court **GRANTS** the motion for partial summary judgment. The Court also **GRANTS** the motion for sanctions, **STRIKES** the defendants' pleadings, and **GRANTS** a default judgment to UHC.

## I. Background

This case just celebrated its sixth birthday. In January 2017, UHC sued Defendant Next Health LLC and a collection of its laboratories and pharmacies (collectively, "Next Health")[1] for a variety of claims related to Next Health's alleged

---

[1] The complaint originally named Next Health LLC; Medicus Laboratories LLC; US Toxicology LLC; American Laboratories Group LLC; United Toxicology LLC; Erik Bugen; and Kirk Zajac. Doc. No. 1 at 1. The second amended complaint—the live pleading before the Court—names the same defendants and adds Executive Healthcare LLC; Apex Pharma LLC; Dallasite, Inc.; Total Pharma LLC; True Labs LLC; Semyon Narosov; Jeremy Rossel; Rob Close; Amir Mortazavi; Mike Austin; Nick

multi-million-dollar healthcare fraud.[2]  UHC claims that Next Health defrauded it of over $100 million "by submitting false and misleading claims seeking payment for lab tests and prescription medications," which Next Health accomplished through "a network of shell companies and marketers" that "funnel[led] kickbacks to doctor referral sources."[3]

Since then, Next Health's majority owners have pled guilty and served years of prison time for crimes arising from this conduct.[4]  And since then, UHC and Next Health have been locked in a bareknuckle discovery fight that has featured six successful motions to compel from UHC and ten violations of discovery orders by Next Health.[5]  At a status conference in November 2020, "the only reason" Judge Brown denied UHC's request for case-ending, "death penalty sanctions" was the Fifth Circuit's requirement that courts "select the least onerous sanction possible to deter future bad behavior."[6]  But in light of "a record [] that is replete with a showing of clear delay and constant contumacious conduct," Judge Brown stated that "any further infractions w[ould] . . . result in th[e] Court striking [Next Health's] answer"

---

Austin; Cary Rossel; Jen Sears; Alle Byeseda; Josh Ihde; Josh Daniel; Arvin Zeinali; and Yan Narosov. Doc. No. 584 at 1.  Defendants Kirk Zajac, Alle Byeseda, and Erik Bugen have since been dismissed. Doc. Nos. 687, 730, and 736.

[2] Doc. No. 1 at 62–81.

[3] Doc. No. 714 at 5.

[4] *See generally* Plea Agreement, *U.S. v. Narosov*, No. 3:18-CR-0475-JJZ, 2018 WL 11193541 (N.D. Tex. Sept. 24, 2018) (providing the plea agreement of Semyon Narosov)

[5] *See* Doc. No. 714-1 at 3–13 (providing a timeline of Next Health's discovery violations).

[6] Doc. No. 530 at 111–12.

and reiterated that any "further shenanigans in this case" would result in case-ending sanctions.[7]

Cue further shenanigans.  In the summer of 2022, UHC learned that Next Health had committed several egregious acts of spoliation *four years prior* and, critically, that Next Health had been concealing these acts ever since.  As UHC summarizes it,

> Next Health relinquished control over at least three entire volumes of electronically stored lab data and pharmacy records—all after this suit was filed, after UHC issued discovery requests and filed two motions to compel, after the Court granted those motions and ordered disclosure of Next Health's lab databases, and after the FBI raided the company and arrested its owners pursuant to federal money laundering crimes they accomplished through Next Health itself.  Next Health could not have been on clearer notice that this information should have been preserved.[8]

This is no overstatement.  Accused of falsifying lab data and pharmacy records, Next Health disposed of its original lab data and pharmacy records.  Specifically, UHC learned in July 2022 that Next Health, at least four years prior, had disposed of three critical pieces of evidence: (1) its laboratory information database ("LabDaq"),[9] (2) its pharmacy records management system ("Computer Rx"),[10] and (3) its central audio

---

[7] *Id.* at 112.

[8] Doc. No. 714 at 5; *see* Doc. No. 706 at 6–7, 15–17.

[9] Despite a July 2018 Court order to disclose its databases, Next Health handed over its LabDaq servers to a third party in October 2018 instead of to UHC.  *See* Doc. Nos. 714-1 at 5–6; 717-1 at 6–8.  When Next Health sought to retrieve the servers, several were missing or inexplicably inoperable.  Doc. No. 717-1 at 4–5.  Next Health had made no copies of these servers before giving them up and has offered no way of retrieving the lost information.  It never disclosed the existence of the LabDaq servers until July 2022.  *Id.* at 2.

[10] In July 2022, Next Health said it "no longer possesses [the Computer Rx] database" because, "[a]s required by law, Next Health transferred th[e] Computer R[x] database to an unaffiliated entity, LakePointe Pharmacy, Inc., in August 2018[.]"  Doc. No. 706 at 13.  Next Health has never identified

recording database containing records of patient conversations ("Lightspar").[11] Though Next Health disputes the details—including timing, the totality of the spoliation, and whether Next Health or its attorneys are truly responsible—it does not dispute the fact that it relinquished control of these records and made no copies, and that much, or all, of this evidence is now irretrievable. Nor does it dispute that it concealed these acts from UHC and the Court for the next four years.

UHC now moves for case-ending sanctions against Next Health. UHC also moves for partial summary judgment on its fraud claim against Next Health. In a one-page "limited response" to UHC's partial-summary-judgment motion, Next Health says it "has no representatives or employees who can assist or direct any actions of counsel" which "ethically precludes . . . the formation of any substantive response."[12] Accordingly, the Court will treat UHC's partial-summary-judgment motion as unopposed.

## II. Summary Judgment

The Court turns first to UHC's motion for partial summary judgment on its fraud claim against Next Health.

### A. Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light

---

what law required this action. Next Health further claims that "LakePointe went out of business in 2021, leaving no way for Next Health to produce the database." *Id.* at 15.

[11] In July 2022, Next Health said that "the recordings . . . would have been housed by [Next Health's] phone vendor, 'Lightspar' and that Next Health closed its account with Lightspar in or around August 2017." *Id.* at 6. Next Health claims it "contacted [Lightspar] to elicit further information" and learned that Lightspar "does not have any records and that its retention period is 12 months." *Id.* at 7.

[12] Doc. No. 729 at 1.

most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]   "A fact is material if it 'might affect the outcome of the suit,'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[14]

A party's failure to respond to a summary-judgment motion "does not permit entry of a 'default' summary judgment," but "the court is permitted to accept the movant's evidence as undisputed."[15]   District courts faced with an unopposed motion for summary judgment "are obliged to assess whether the movant has met the burden of establishing the absence of a genuine [dispute] of material fact regardless of whether any response was filed."[16]

## B. Analysis

UHC's second amended complaint alleges common-law fraud against Next Health.[17]   Under Texas law, UHC must prove that Next Health (1) "made a material representation that was false;" (2) "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) "intended to induce [UHC] to act upon the representation;" and (4) UHC "actually and

---

[13] FED. R. CIV. PROC. 56(a); *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

[14] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[15] *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.) (citing *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988)).

[16] *Ervin v. Sprint Commc'ns. Co. LP*, 364 F. App'x 114, 118 (5th Cir. 2010) (per curiam) (cleaned up).

[17] Doc. No. 584 at 127–140.

justifiably relied upon the representation and thereby suffered injury."[18]

Since Next Health did not respond to the motion, the Court takes all of UHC's unopposed summary-judgment evidence as true. In light of this evidence, the Court finds that UHC has presented a prima facie case that it is entitled to summary judgment on its fraud claim through at least four different fraudulent acts by Next Health.

First, Next Health's labs submitted claims to UHC that falsely represented that UHC's members had authorized UHC to pay their benefits directly to Next Health's labs.[19] As a result of Next Health's knowing misrepresentations, UHC paid over $90 million to Next Health's labs for claims UHC's members did not authorize.[20]

Second, Next Health's labs billed UHC for genetic tests they knew they did not perform,[21] which caused UHC to pay over $11 million to Next Health's labs that UHC did not owe.[22]

Third, Next Health submitted claims using false billing credentials in an attempt to circumvent payment holds UHC placed on Next Health's labs that came under scrutiny for suspected fraud.[23] But for Next Health's knowing

---

[18] *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

[19] Doc. Nos. 721-2 at 31–32, 38, 43, 69–71; 721-4 at 35; 723-2 at 14–16.

[20] Doc. No. 721-4 at 48; Confidential UHC Exhibit 1 (physical document filed under seal with the Court per Doc. Nos. 724, 737).

[21] Doc. Nos. 721-2 at 43, 63, 67, 118–44; 721-4 at 88–89; Confidential UHC Exhibits 2-A, 2-B, and 2-E (physical documents filed under seal with the Court per Doc. Nos. 724, 737).

[22] Doc. No. 721-4 at 48–53; Confidential UHC Exhibits 2-A, 2-B, 2-E (physical documents filed under seal with the Court per Doc. Nos. 724, 737).

[23] Doc. Nos. 721-2 at 3, 35, 43–44; 721-4 at 38; 723-2 at 2–3, 19–20, 27–28; Confidential UHC Exhibits 2-F, 2-G (physical documents filed under seal with the Court per Doc. Nos. 724, 737).

misrepresentation, UHC would not have paid these claims, which amounted to over $15 million.[24]

Fourth, Next Health took advantage of residents of a sober-living facility by acquiring unneeded drug tests from the residents and billing them to UHC, though no physician had ordered the drug tests.[25]  As a result of this fraudulent scheme, UHC paid Next Health's labs over $13 million that it would not have otherwise paid.[26]

Based on UHC's unopposed summary-judgment evidence, all four of these examples of Next Health's conduct demonstrate knowingly false material representations.  Next Health intended to induce UHC to act upon those misrepresentations, and, to its detriment, UHC did so.

UHC has carried its summary-judgment burden.  No material fact is disputed, and no reasonable jury could return a verdict for Next Health.  UHC is entitled to judgment as a matter of law.  The Court **GRANTS** summary judgment against Next Health on UHC's fraud claim.

## III.  Sanctions

The Court previously agreed to "take under advisement" UHC's motion for case-ending sanctions.[27]  The time has come.

---

[24] Doc. No. 721-4 at 48–53; Confidential UHC Exhibits 2-F, 2-G (physical documents filed under seal with the Court per Doc. Nos. 724, 737).

[25] Doc. Nos. 721-2 at 8–12, 18–27, 64–65; 721-4 at 43–45.

[26] Doc. No. 721-4 at 48–53; Confidential UHC Exhibit 3 (physical document filed under seal with the Court per Doc. Nos. 724, 737).

[27] Doc. No. 720 at 2.

## A.  Legal Standard

Federal Rule of Civil Procedure 37(e)(2)(C) states that intentional spoliation of evidence may warrant dismissal or default judgment:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court[,] . . . only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation[,] may . . . dismiss the action or enter a default judgment.

And Rule 37(b)(2) "empowers a district court to impose 'just' sanctions on parties who disobey a discovery order," including "order[ing] the dismissal of a claim."[28]

"[D]ismissal is a severe sanction that implicates due process," and the Fifth Circuit has deemed it "a draconian remedy and a remedy of last resort."[29]  Because courts should discharge this "lethal weapon only under extreme circumstances,"[30] the Fifth Circuit requires four preliminary findings for a district court to "dismiss a case as a sanction for violating a discovery order": (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct," (2) "the violation of the discovery order must be attributable to the client instead of the attorney," (3) the "misconduct must substantially prejudice the opposing party," and (4) "a less drastic sanction would [not] substantially achieve the

---

[28] *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994); *see* FED. R. CIV. PROC. 37(b)(2)(A)(iii)–(vi) ("If a party . . . fails to obey an order to provide or permit discovery[,] . . . the court where the action is pending may issue further just orders" that "may include . . . striking pleadings," "dismissing the action," or "rendering a default judgment against the disobedient party[.]").

[29] *Conner*, 20 F.3d at 1380 (cleaned up).

[30] *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993).

desired deterrent effect."[31]  And deterrence is key: The Supreme Court has noted that the object of case-ending sanctions is "not merely to penalize," but also "to deter those who might be tempted to such conduct in the absence of such a deterrent."[32]

## B. Sanctions Are Warranted Under the Federal Rules

Rules 37(b) and 37(e) each provide an independently sufficient basis for imposing sanctions against Next Health.

As to Rule 37(b), it is undisputed that Next Health has already disobeyed at least ten discovery orders from three different federal judges, and its spoliation of the LabDaq database is the latest discovery disobedience to come to light.[33]  Given the severity and frequency of Next Health's discovery misconduct, Rule 37(b) authorizes the Court to "issue further just orders," including severe sanctions.[34]

And as to Rule 37(e), the Court finds that Next Health intentionally spoliated "electronically stored information that should have been preserved . . . with the intent to deprive [UHC] of the information's use in the litigation."[35]  Rule 37(e)(2) essentially imposes a bad-faith requirement before the Court may dismiss a case due to destruction of electronic evidence.  A party's "failure to preserve key [data], in the

---

[31] *Conner*, 20 F.3d at 1380–81 (cleaned up).

[32] *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

[33] *See* Doc. Nos. 714-1 at 3–13 (detailing previous discovery violations); 164 at 1–2 (July 2018 protocol "govern[ing] the discovery, processing, and production of electronically stored information" and requiring the parties to "preserve all discoverable [electronically stored information] in their possession, custody, or control"); 717-1 at 6–8 (October 2018 agreement handing over the LabDaq database to a third party).

[34] Fed. R. Civ. Proc. 37(b)(2)(A).

[35] Fed. R. Civ. Proc. 37(e)(2).

face of a request to produce and preserve" it, "strongly evinces bad faith."[36]  And a party's "derogation of [its] responsibility to preserve the only pure [] data" relevant to a dispute "lends itself to no other explanation."[37]  UHC requested the LabDaq data in 2017, and the Court ordered Next Health to turn it over in 2018.  But Next Health surrendered that data to a third party (that destroyed much of it) three months later.  Similarly, UHC requested the Lightspar data in 2017, and Next Health closed its Lightspar account soon after, making no effort to retrieve the data before it fell prey to Lightspar's 12-month data retention policy.  And Next Health parted with the Computer Rx data just one month after the Court ordered it to identify its databases.  The Court finds that Next Health intentionally destroyed this electronic evidence to deprive UHC of its use in litigation.[38]

## C. Dismissal Is the Appropriate Sanction

The Court turns to the four Fifth Circuit factors to determine whether dismissal is a proper sanction for these violations.

Beginning with the first factor, the Court found two years ago—before the spoliation of the LabDaq, Computer Rx, and Lightspar data came to light—that the record was already "replete with a showing of clear delay and constant contumacious conduct."[39]  And UHC's tidy summation of each verified discovery violation and all

---

[36] *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 802 (N.D. Tex. 2011) (Boyle, J.).

[37] *Id.*

[38] *See T & E Inv. Grp. LLC v. Faulkner*, Nos. 11-CV-0724-P & 3:11-CV-1558-P, 2014 WL 550596, at *16–17 (N.D. Tex. Feb. 12, 2014) (Solis, J.) (finding bad faith because a party altered computer data the day after it was ordered to disclose that data).

[39] Doc. No. 530 at 112.

the sanctions granted thus far in this case is uncontradicted and utterly damning.[40] Next Health's record displays half a decade of unrepentant and willful noncompliance due to bad faith and brazen disrespect for the Court. These latest violations are not merely icing on the cake. They present perhaps the most flagrant, damaging, and substantial spoliation thus far—and the competition is steep. The Court finds that the first factor is satisfied.

Next Health focuses mainly on the second factor—whether the discovery violation is attributable to the attorney or the client. It tries to pin the blame for all spoliation on one of its former attorneys, James Bell, who asked the Court to hold him personally responsible for Next Health's "sanctionable conduct" before withdrawing from the case in January 2021.[41] But Next Health's ability to now disclose in detail the spoliation of the LabDaq, Computer Rx, and Lightspar data shows that this information has been available to Next Health since Bell's departure—why continue the concealment? Bell cannot take the blame for misconduct that occurred after he withdrew. Next Health knew of the spoliation and continued to hide it after Bell was long gone. And whatever role Bell might have played in the spoliation, Next Health cannot plausibly claim it was entirely unaware of Bell's activity and that Bell alone disposed of all the data in question. For one thing, a Next Health executive's signature, not Bell's, appears on the contract

---

[40] *See* Doc. No. 714-1 at 3–13 (detailing the timeline, the specific Court orders Next Health violated, and UHC's motions to compel).

[41] Doc. No. 546 at 1.

handing over the LabDaq data in violation of Court orders.[42]  The Court finds that the misconduct is attributable to the client, Next Health, rather than any of its attorneys.

To establish the third element—that Next Health's misconduct substantially prejudiced UHC—UHC "must demonstrate that the missing or altered evidence would have been relevant to [its] case."[43]  "Lost or destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it."[44]

Next Health argues that the spoliation of the Computer Rx and Lightspar data did not prejudice UHC because "any loss of the Computer Rx and/or [] Lightspar recordings occurred before [UHC] filed its Motion for Leave to File First Amended Complaint [] on September 30, 2019, [which] thereby first creat[ed] a duty to preserve pharmacy[-]related data."[45]  Next Health offers no explanation for its claim that the duty to preserve this data arose from the amended complaint rather than the original complaint, which alleged lab-related fraud and falsification of pharmacy data.  Next Health's duty to preserve the Computer Rx and Lightspar data arose as soon as it knew or should have known that the evidence was relevant to UHC's case against it—that is, when UHC filed its original complaint alleging lab-related fraud.

---

[42] Doc. No. 717-1 at 8.

[43] *Ashton*, 772 F. Supp. 2d at 801.

[44] *Id.* (cleaned up).

[45] Doc. No. 717 at 11 (emphasis omitted).

As to the LabDaq data, Next Health assures the Court that UHC has not been prejudiced because "all but two of the LabDaq databases have been recovered," so total and permanent spoliation has not occurred.[46]  Even assuming this is true, Next Health still admits that two databases remain lost, i.e., spoliated.  Its argument that it handed over the data to a third party for preservation purposes and that any loss was thus beyond its control also fails because the bare fact of giving away incriminating data that the Court ordered Next Health to disclose, without preserving any copies, demonstrates "flagrant bad faith and callous disregard of [Next Health's] responsibilities."[47]  The third element is satisfied because Next Health's misconduct substantially prejudiced UHC.

Finally, the fourth element is met because Next Health has demonstrated that no less drastic sanction could achieve the necessary deterrent effect.  Courts are not "required to attempt to coax parties into compliance with [their] order[s] by imposing incrementally increasing sanctions," but even if they were, the Court has run out of increments.[48]  Next Health has violated at least ten discovery orders and prompted six successful motions to compel from UHC.[49]  The Court has imposed previous sanctions and issued increasingly stern warnings, all of which appear to have fallen on deaf ears.  Enough is enough.  Denying the relief UHC seeks would not serve justice; it would only serve to embolden other dishonest parties to game the system

---

[46] *Id.* at 11–12.

[47] *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976).

[48] *Moore v. CITGO Refining & Chems. Co., L.P.*, 735 F.3d 309, 317 (5th Cir. 2013) (cleaned up).

[49] *See* Doc. No. 714-1 at 3–13.

by flouting discovery orders and concealing—or destroying—evidence.  "The duty to preserve evidence is a duty owed to the *court*, not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process."[50]  Next Health's dereliction of its duty to the Court could not be clearer.  This element is met, and the Court finds that dismissal is the appropriate—indeed, the only—sanction that will achieve the necessary deterrent effect.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** summary judgment against Next Health on UHC's fraud claim.  Because Next Health's behavior warrants sanctions under Rule 37 and dismissal is the proper sanction, the Court **GRANTS** UHC's motion for sanctions, **STRIKES** Next Health's answer, and **GRANTS** default judgment for UHC.

The Court will enter a separate order addressing damages and attorney's fees.[51]

**IT IS SO ORDERED** this 21st day of March, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[50] *Ashton*, 772 F. Supp. 2d at 800.

[51] FED. R. CIV. PROC. 37(b)(2)(C).

14